**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 34336**

| | |
|---|---|
| ROBERT C. READ and ALEXIS M. READ, ) | |
| ) | Coeur d'Alene, April 2009 Term |
| Plaintiffs-Respondents, ) | |
| ) | 2009 Opinion No. 74 |
| v. ) | |
| ) | Filed: May 29, 2009 |
| JENNIFER HARVEY, ) | |
| ) | Stephen Kenyon, Clerk |
| Defendant-Appellant. ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Honorable John T. Mitchell, District Judge.

The decision of the district court is <u>affirmed</u>. Appellant's motion to strike is <u>denied</u>.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for appellant. Scott Campbell argued.

Dean & Kolts, Coeur d'Alene, for respondents. Charles Dean Jr. argued.

_____

HORTON, Justice

This is a boundary line dispute. Appellant Jennifer Harvey (Harvey) appeals the district court's decision quieting title in favor of her neighbors, Respondents Robert and Alexis Read (the Reads), and setting the boundary between their respective properties at the centerline of a creek that flows through a route, known as channel C to channel A, which lies to the west of where Harvey believes the boundary should be located. We affirm the district court's decision quieting title in favor of the Reads, requiring Harvey to pay for a survey of the boundary, and awarding the Reads attorney fees. In addition, we deny Harvey's motion to strike portions of the Reads' appellate brief and award the Reads attorney fees on appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Harvey and the Reads own adjacent properties that were originally part of a larger tract owned by Dick and Nancy Andersen (the Andersens). In 1972, the Andersens sought the help of real-estate broker Jerry VanOoyen (VanOoyen) to divide and sell their property as fourteen separate parcels. The Andersens' property was traversed by a watercourse known as Little Gold

Creek, the main tributary to Gold Creek, and VanOoyen recommended that Little Gold Creek be designated as the boundary between eleven of the fourteen parcels. Later that year, the Andersens sold some of their land to Frank Boss (Boss), Harvey's predecessor in interest. The boundary description in the deed between the Andersens and Boss describes the boundary between what is now Harvey's property and what is now the Reads' property as being "the centerline of the main tributary to the creek."

That tributary presently flows from the north to the southwest, then back towards the southeast through a route that has come to be known as channel C to channel A. Channel B does not contain flowing water; however, if it did, the water would flow more directly to the south, rather than flowing to the west and then back to the east as do channels C and A, eventually joining up with the creek as it presently flows. The Reads claim that since 1972 the creek has flowed where it presently does, to the west of channel B, through channels C and A, and that the parties to the Andersen/Boss deed intended the centerline of the C to A course to be the boundary. Accordingly, the Reads filed a quiet title action in 1999. Harvey answered and counterclaimed, arguing that the parties to the 1972 deed were not referencing the wet creek that flowed through channels C and A at the time, but rather the dry historical bed of the creek, which, she argued, lay to the east of channels C and A and even B. The district court granted summary judgment in favor of the Reads, and the Idaho Court of Appeals affirmed that decision. In *Read v. Harvey*, 141 Idaho 497, 112 P.3d 785 (2005), upon a petition for review, we reversed and remanded the case to the district court because we found that there was a genuine issue of material fact as to whether the parties to the 1972 deed intended the wet creek or rather the historical dry bed to be the boundary.

At trial, Harvey changed her position. She conceded that the parties to the deed intended the wet creek to be the boundary, but argued that in 1972 the creek flowed to the east of channels C and A and that alteration by the Reads after 1972 caused the creek to flow where it presently does, through channels C and A. After a three-day trial, the district court again quieted title in favor of the Reads, setting the boundary at the course of channels C and A. The court ordered Harvey to pay for a survey of the boundary and awarded the Reads attorney fees incurred after October 3, 2005, the date of Harvey's responses to the Reads' first set of requests for admission, pursuant to I.R.C.P. 37.

Harvey timely appeals. After the Reads filed their brief with this Court, Harvey moved to strike several portions of it. We ordered that we would take the motion under advisement and issue a ruling in this opinion. The Reads request attorney fees on appeal.

## II. STANDARD OF REVIEW

Review of a trial court's decision is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law. *Benninger v. Derifield*, 142 Idaho 486, 488-89, 129 P.3d 1235, 1237-38 (2006) (citing *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 946, 949, 812 P.2d 253, 256 (1991)). Since it is the province of the trial court to weigh conflicting evidence and testimony and to judge the credibility of the witnesses, this Court will liberally construe the trial court's findings of fact in favor of the judgment entered. *Rowley v. Fuhrman*, 133 Idaho 105, 107, 982 P.2d 940, 942 (1999) (citing *Sun Valley Shamrock Res., Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990)). A trial court's findings of fact will not be set aside on appeal unless the findings are clearly erroneous. *Ransom v. Topaz Mktg., L.P.*, 143 Idaho 641, 643, 152 P.3d 2, 4 (2006) (citing *Camp v. East Fork Ditch Co., Ltd.*, 137 Idaho 850, 856, 55 P.3d 304, 310 (2002); *Bramwell v. South Rigby Canal Co.*, 136 Idaho 648, 650, 39 P.3d 588, 590 (2001); I.R.C.P 52(a)). If the findings of fact are based upon substantial evidence, even if the evidence is conflicting, they will not be overturned on appeal. *Benninger*, 142 Idaho at 489, 129 P.3d at 1238 (citing *Hunter v. Shields*, 131 Idaho 148, 151, 953 P.2d 588, 591 (1998)). This Court will not substitute its view of the facts for that of the trial court. *Ransom*, 143 Idaho at 643, 152 P.3d at 4 (citing *Bramwell*, 136 Idaho at 648, 39 P.3d at 588).

## III. ANALYSIS

Harvey argues that the district court erred as a matter of law in ruling that the existence of water in channel A in 1972 constituted the law of the case and in relying on the testimony of VanOoyen to establish the intent of the parties to the Boss/Andersen deed. She also contends that there is not substantial, competent evidence that channel C existed or that channel A carried water in 1972. Harvey further argues that the district court erred in ordering her to pay for the boundary survey and awarding the Reads attorney fees. Finally, Harvey asks this Court to strike the portions of the Reads' brief that she considers unprofessional. The Reads request attorney fees on appeal. We address these issues in turn.

**A. The district court's initial ruling that the existence of water in channel A was the law of the case is not reversible error.**

Harvey contends that the district court erred when it stated that the existence of water in channel A in 1972 was the law of the case and as a consequence refused to consider evidence suggesting otherwise. On the first day of trial, the district court stated: "I think it is the law of the case that water flowed in Channel A in 1972, and I think that is reiterated by the Supreme Court . . . If anybody's expert comes in here and tells me the water wasn't flowing in A, that's tough because that's been established." In its memorandum decision issued after conclusion of trial, the district court reversed itself, stating:

> The Idaho Supreme Court's finding that channel A ". . . has consistently during the times in question carried water," is not "the law of the case," but a finding of fact by the Idaho Supreme Court which is not binding on this Court. However, it is a finding of fact which is supported by all the evidence.

(Emphasis original.) We recognize that this corrective statement came only at the conclusion of the proceedings below and that during the trial the court may have been disinclined to consider evidence contradicting this Court's earlier statement. However, I.R.E. 103(a) states in relevant part that:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

Harvey fails to identify any instance in the record where the district court refused to admit evidence that tended to show that water was not flowing in channel A in 1972. Further, the record reflects that Harvey did not make "the substance of the evidence" which she did not offer known to the district court. Perhaps most significantly, in the argument before the district court on this subject, counsel for Harvey informed the district court: "We're not disputing that water was flowing in Channel A. However, that was not the source of water from Little Gold Creek. That water was water from draining the subsurface ground water to allow that particular area to be farmed." On this record, we conclude that the district court's initial confusion regarding the law of the case doctrine is not a basis for reversal.

In conjunction with this argument, Harvey also contends for the first time on appeal that testimony in the record from VanOoyen and Boss establishes that channel A did not carry water in 1972 and that the district court's finding to the contrary was thus "an exercise of what can only be described as willfully obtuse reasoning." We need not address this issue because Harvey raises it for the first time on appeal. *Johannsen v. Utterbeck*, 146 Idaho 423, 429, 196 P.3d 341,

347 (2008). Although this contention is not properly before this Court for consideration on appeal, we will address it because it is based upon a distortion of the evidence presented at trial and because it is relevant to our decisions regarding attorney fees. *See* Parts III.E and III.F, *infra*.

Both VanOoyen and Boss testified about a drainage ditch that existed in the area in question in 1972 but did not carry a steady flow of water. Harvey alleges that VanOoyen testified that this ditch was located to the south of and parallel to the boundary creek. Harvey next points out that Boss testified that he had to cross this dry ditch in order to get from his cabin in the southwest to his watering-hole near the boundary creek in the northeast. Harvey goes on to note that there is no dispute that channel A lies parallel to and south of channel B, but that there is no evidence of a ditch that runs parallel to and south of channel A. Harvey thus concludes that the ditch Boss crossed to get to his watering-hole must be channel A, and that when VanOoyen and Boss testified about a creek with continual flow, what they were actually talking about was the creek as it flowed through channel B. This argument is flawed because it misrepresents VanOoyen's testimony.

First, VanOoyen distinguished between the relatively dry ditch and channel A, which contained a regular flow of creek water. VanOoyen testified that there existed in 1972 a dry drainage ditch to the *northwest* of the disputed area. While VanOyen admitted that this ditch eventually ran into the creek, he also testified that in 1972 he recognized a difference between the ditch, which did not have a constant flow of water and was located to the northwest of channel A, and the creek that was located where the water flows today in channel A and in which water flowed consistently. VanOoyen knew the difference between the ditch and the creek, and he testified the ditch was to the northwest of where the creek ran in channel A.

Yet Harvey states in her opening brief that "[a]t trial, the Reads attempted to elicit testimony from Mr. VanOoyen that this 'drainage ditch' was depicted on his 1972 marketing diagram by a dotted line located parallel to, but just south of, the location of the creek." This is not accurate. As noted, VanOoyen testified that the ditch was to the northwest of the creek. There are two dotted lines on a marketing diagram that VanOoyen created, one to the north and one to the south. Although it is true that VanOoyen later realized that these dotted lines were intended to outline a meadow, rather than to show the existence of ditches, he initially testified that the drainage ditch was depicted by the northern dotted line on his marketing diagram.

Counsel for the Reads did not, as Harvey contends, attempt to elicit testimony from VanOoyen that the ditch was depicted by the line "located parallel to, but just south of, the location of the creek," nor did VanOoyen ever testify that the ditch was parallel to and south of the creek. Harvey's suggestions to the contrary are, at best, misleading.

Harvey attempts to bolster her claim that VanOoyen located the ditch parallel to and south of the creek by referring to VanOoyen's second affidavit offered in connection with summary judgment proceedings. We note that the Reads contend that Harvey obtained this affidavit from VanOoyen through trickery, a claim Harvey does not deny. More significant to our analysis, neither party marked this affidavit as an exhibit or mentioned it at trial, much less used it to impeach VanOoyen's testimony. As the second affidavit was not before the district court at trial, Harvey's attempt to utilize the evidence contained therein before this Court on appeal is improper.

In sum, the district court's initial confusion regarding the law of the case doctrine is not a basis for assigning error. Harvey's further claim that this confusion precluded the court from considering testimony from VanOoyen and Boss showing that channel A was dry in 1972 is not only raised for the first time on appeal, but is based upon a misrepresentation of VanOoyen's testimony.

**B.   We decline to consider whether the district court erred in relying on VanOoyen's testimony to establish the intent of the parties to the deed.**

Harvey contends, for the first time on appeal, that the district court erred as a matter of law in relying on the testimony of VanOoyen to establish the intent of the parties to the Boss/Andersen deed. We decline to address this issue because Harvey raises it for the first time on appeal. *Johannsen*, 146 Idaho at 429, 196 P.3d at 347.

**C.   We decline to grant Harvey's request to reverse and instruct the district court to establish the boundary between the parties' property at the location of channel B.**

Harvey contends that the Reads have failed to meet their burden of proving that the boundary lies in the location of channel A because they have failed to prove the existence of channel C in 1972, thus failing to prove that channel A carried water from Little Gold Creek via channel C in 1972. Harvey did not present this claim to the district court, and thus we will not address it. *Johannsen*, 146 Idaho at 429, 196 P.3d at 347.

In conjunction with this argument, Harvey requests that we not only reverse the district court but instruct it to set the boundary in the location of channel B. The request that this Court

instruct the district court to set the boundary in the location of channel B is made without reference to any evidence in the record that would support the conclusion that water flowed in channel B in 1972. Thus, the request is made without reference to evidence in the record that would support a finding that Harvey has "succeed[ed] on the strength of [her] own title, and not on the weakness of that of [the Reads]," *Pincock v. Pocatello Gold and Copper Min. Co., Inc.*, 100 Idaho 325, 331, 597 P.2d, 211, 217 (1979), despite the fact that Harvey herself recognizes that this is the standard that must be met for success in a quiet title action. We decline to grant Harvey's request.

**D. The district court did not err in ordering Harvey to pay for a survey of the creek.**

In the exercise of its equitable powers, the district court ordered Harvey to pay for a survey of Little Gold Creek. Harvey argues the cost for such a survey is more equitably placed upon the Reads. We disagree.

"A judgment defining rights to land must be precise in its description." *Standall v. Teater*, 96 Idaho 152, 157, 525 P.2d 347, 352 (1974). Because the record here fails to contain any metes and bounds description of Little Gold Creek sufficient to properly describe the parties' respective properties, the trial court was correct to order that a surveyor perform a survey. *Id.* In similar cases, we have ordered that the costs of such a survey be fixed by the trial court and borne equally by the parties. *See, e.g., id.*; *Lisher v. Krasselt*, 94 Idaho 513, 517, 492 P.2d 52, 56 (1972). There is, however, no statutory requirement that the cost be shared between the parties nor have we prescribed such a requirement in our previous decisions; rather the trial court exercises its equitable powers when entering such an order, which we review for an abuse of discretion.

Harvey presented no evidence that the parties to the Boss/Andersen deed intended the boundary between their properties to be anywhere but at the centerline of Little Gold Creek as it flowed in 1972, nor did she produce evidence that the district court found credible that the creek has changed course since that time. We cannot conclude that the district court abused its discretion in exercising its equitable powers to order her to pay for a survey of the boundary. We therefore affirm the district court's order.

**E. The district court did not err in awarding attorney fees to the Reads.**

Harvey claims that the district court erred in awarding the Reads attorney fees based upon Harvey's responses to the Reads' first set of requests for admission pursuant to I.R.C.P. 37(c).

- 7 -

Specifically, Harvey argues that she should not have been so sanctioned because she had a reasonable belief that she might prevail on the issues addressed in the Reads' requests for admission.

> I.R.C.P. 37(c) states in relevant part that:
>
> If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that . . . the party failing to admit had reasonable ground to believe that the party might prevail on the matter . . . .

The rule is mandatory unless the exception applies, and whether the exception applies is committed to the sound discretion of the district court. *Contreras v. Rubley*, 142 Idaho 573, 577, 130 P.3d 1111, 1115 (2006). The standard of review for a discretionary decision is whether the court perceived the issue as one of discretion, acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it, and reached its decision by an exercise of reason. *Sun Valley Shopping Ctr. v. Idaho Power,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

> The district court noted that:
>
> The "issue" as framed by most all of the Requests for Admission, are that the water flowed in Channel "A" at all times pertinent to this litigation (since 1972 and ever since that time), and that in 1972 when the property was subdivided by Andersens [sic] it was their intent that the boundaries run to this Channel A where the creek was running. Harvey argues she was reasonable in her denial because "the Supreme Court clearly found that there was a genuine issue of material fact as to whether the boundary should be the now-relatively dry natural stream channel, or Channel A." Harvey completely ignores that whether the Supreme Court found there to be an issue of material fact regarding some historical dry stream channel has nothing to do with what she was being asked to admit, ie [sic], that in 1972 water flowed in Channel "A," only in Channel "A" and that Channel "A" is what the Andersens intended to be the boundary when they subdivided in 1972. Harvey's remaining reasons why her denials were based upon "a reasonable belief in prevailing upon the issue" likewise ignore the "issue" sought to be admitted. Harvey claims she had evidence of Reads' dredging in the 1990's, that Reads altered the flow of the channel and that some of the other deeds referenced "drainage ditch" and "creek." None of those has a thing to do with what Harvey was being asked to admit, and that was the fact that in 1972 water flowed in Channel "A," only in Channel "A" and that Channel "A" is what the Andersens intended to be the boundary when they subdivided in 1972.

Harvey argues on appeal that the district court abused its discretion in not considering that Harvey could have reasonably believed she would prevail on this issue at trial, based upon the "testimony of Jerry VanOoyen, Frank Boss, John Gillham, Richard Tucker, and a host of expert witnesses" that water was flowing other than in channel A in 1972 and that it therefore could have been the intent of the parties to place the boundary in a location other than channels C and A.

As previously discussed, on this appeal, Harvey has distorted the testimony from VanOoyen and Boss in an effort to make it appear that there is evidence that water flowed elsewhere than in channel A in 1972. The district court found that John Gillham had no basis for his opinion that the creek flowed in channel B in the 1980's. It is evident that Harvey should have realized that Gillham would not be a credible witness; as revealed during cross-examination, Harvey concealed a number of facts from Gillham that contradicted his testimony. As for Richard Tucker, a review of his testimony reveals he did not testify that water was flowing in any location other than channel A in 1972. Therefore, we hold that the district court did not abuse its discretion in finding that Harvey did not reasonably believe she could prevail at trial on the issue of water in channel A in 1972 and awarding the Reads attorney fees under I.R.C.P. 37(c).

**F.  We deny Harvey's motion to strike portions of the Reads' brief and award the Reads costs and attorney fees on appeal.**

The Reads have requested an award of attorney fees on appeal, but have not directed this Court to a statute or rule authorizing such an award. Harvey has asked this Court to strike portions of the Reads' brief to this Court, which she alleges are disrespectful, invective, and scurrilous. It is true that the tone of the language and argument in the Reads' brief is not consistent with standards of civility and professionalism that we expect of counsel. However, the outrage that is conveyed in the Reads' brief is understandable, because Harvey's conduct in this appeal is sanctionable. Accordingly, we deny Harvey's motion to strike portions of the Reads' brief.

Idaho Appellate Rule 11.1 provides in part that:

The signature of an attorney or party constitutes a certificate that the attorney or party has read the notice of appeal, petition, motion, brief or other document; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is

not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If the notice of appeal, petition, motion, brief, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the notice of appeal, petition, motion, brief or other document including a reasonable attorney's fee.

We have previously stated that:

[A] violation of this rule requires the signed notice of appeal, petition, motion, brief or other document to (1) not be well grounded in fact (2) not be warranted by existing law or not be a good faith argument for the extension, modification, or reversal of existing law and (3) to be interposed for an improper purpose.

*Fritts v. Liddle & Moeller Const., Inc.*, 144 Idaho 171, 176, 158 P.3d 947, 952 (2007) (citations omitted).

In *Fritts*, this Court found that where a party failed to supply an adequate record its appeal was not well grounded in fact and thus violated the first element of I.A.R. 11.1. *Id.* at 176, 158 P.3d at 952. While the record itself in this appeal is more than adequate, Harvey's representation of it is not. Harvey's most persistent, if not persuasive, argument is that channel A is actually the ditch parallel to and west of the creek, which is actually located in channel B. This argument is based on distortion and misrepresentation of the record. Further, certain factual assertions advanced before this Court were not advanced before the trial court. We find a clear purpose for this: the trial court heard the witnesses' testimony and observed their identification of locations on exhibits used during trial. Factual assertions that have been advanced before this Court would have been rejected out-of-hand for lack of supporting evidence.

Harvey's appeal cannot be considered warranted by existing law or a good faith argument for a change in the law for the reason that even though she acknowledges that a plaintiff in a quiet title action must succeed on the strength of her own title, she has repeatedly requested this Court to direct the trial court to establish the parties' boundary at the location of channel B, despite having made no cogent argument based upon the record as to why the boundary should be fixed at that location.

Based on Harvey's misrepresentation of the record, her raising legal and factual issues for the first time on appeal, and her request for relief without a foundation in law or fact, we conclude that this appeal was brought for the purpose of harassing the Reads, or to cause unnecessary delay, or to needlessly increase the cost of litigation. Accordingly, as the Reads

- 10 -

have not identified a basis for an award of fees, on our own initiative, we award the Reads attorney fees pursuant to I.A.R. 11.1, to be paid by Harvey's attorney, Scott Campbell.

## IV. CONCLUSION

We affirm the district court's decision quieting title in favor of the Reads, requiring Harvey to pay for a survey of the creek, and awarding the Reads attorney fees. We deny Harvey's motion to strike and award the Reads attorney fees on appeal pursuant to I.A.R. 11.1. Costs to the Reads.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES **CONCUR**.