## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 35768

| | |
|---|---|
| DALE LATTIN and KATHLEEN LATTIN, husband and wife; TYLER CHASE and KATHY CHASE, husband and wife; KENNETH L. STONE and TAFFY M. STONE, husband and wife, <br><br> Plaintiffs-Respondents, <br><br> v. <br><br> ADAMS COUNTY, an Idaho county; BILL BROWN, Adams County Commissioner; JOE HOLMES, Adams County Commissioner; MIKE PARADIS Adams County Commissioner, and JOHN and JANE DOES 1 through 10. <br><br> Defendants-Appellants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Boise, June 2010 Term <br><br> 2010 Opinion No. 85 <br><br> Filed: July 14, 2010 <br><br> Stephen W. Kenyon, Clerk |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Adams County.  Hon. Stephen W. Drescher, District Judge.

The decision of the district court is <u>affirmed</u>.  Attorney fees and costs on appeal are awarded to Respondents.

Richard T. Roats, Adams County Prosecuting Attorney, Council, for Appellants.

Pickens Law, P.A., Boise, for Respondents. Terri R. Pickens argued.

_____

W. JONES, Justice

### I. NATURE OF THE CASE

Adams County appeals from the district court's ruling that an access road running through Respondents' property is not a public road.  Adams County claims that it has acquired the road both by dedication and by prescription.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

Kathleen and Dale Lattin, Kathy and Tyler Chase, and Taffy and Kenneth Stone, Respondents, are three married couples who own properties in the Reico Subdivision of Adams County, Idaho. Sometime in the 1920s, when their parcels were part of a single tract, their predecessor in interest permitted a local logger to construct a temporary access road on the property. The road became known as Old Sawmill Road, but is now commonly known as Burch Lane. Today, Burch Lane connects a public highway with a forest-service road in the Payette National Forest. On the way, it crosses a number of privately owned parcels in the Reico Subdivision, three of which are owned by Respondents, who rely on the road to access their homes. Although the road has always crossed private property, for decades some locals have used the road to reach the forest for recreational purposes. Adams County (the "County"), however, has never expended any resources in maintaining the road or improving it.

Reico Subdivision was first subdivided into thirty-four individual lots in 1974, some of which were sold off, and most of which do not touch Burch Lane. In 1983, the County involuntarily compelled the subdivision developers to record a plat.[1] At the time, Burch Lane was overgrown with trees and difficult to use. The plat depicts Burch Lane but does not identify it as a public easement or right-of-way.

After the subdivision was recorded, some of the new residents improved the road to enable themselves to access their properties. Christy Ward, the Lattins' predecessor in interest, as well as Idaho Power, improved Burch Lane beginning in 1984. At some point, parts of the road were also relocated, although some portions of the original road are still visible. Kathy Chase, one of the landowners in this suit, improved portions of the road in 1998. In 2002, Idaho Power obtained an easement from Respondents to use the road to maintain a power substation located beyond their properties.

At some point, Respondents installed signs on their properties declaring the road to be private. The County responded by threatening Respondents with criminal sanctions if they did not remove the signs. It also informed the landowners that it would classify Burch Lane as a county road and begin maintaining it. The landowners responded by filing a lawsuit against the County requesting declaratory and injunctive relief and seeking to quiet title. The County responded that it had acquired the road by dedication in the Reico Subdivision plat and that, even

---

[1] The record is unclear as to which or how many parcels were sold off prior to 1983.

2

if it had not, the road had passed into public control by prescription. The district court granted summary judgment to the landowners, finding that the County had failed to follow the statutory protocols necessary to establish a public road. It did not expressly address the County's prescription claim. On appeal, the County again raises its dedication and prescription theories.

### III. ISSUES ON APPEAL

**1.** Whether the County acquired the road by dedication in the subdivision plat.

**2.** Whether the County acquired the road by prescription under I.C. § 40-202(3).

**3.** Whether Respondents are entitled to attorney fees on appeal.

### IV. STANDARD OF REVIEW

When reviewing a grant of summary judgment, this Court applies the same standard of review the district court did when ruling on the motion. *Doe v. City of Elk River*, 144 Idaho 337, 338, 160 P.3d 1272, 1273 (2007). Summary judgment is proper if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Estate of Becker v. Callahan*, 140 Idaho 522, 525, 96 P.3d 623, 626 (2004).

"If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review." *Indian Springs LLC v. Indian Springs Land Inv.,* 147 Idaho 737, 746, 215 P.3d 457, 466 (2009) (quoting *Cristo Viene Pentecostal Church v. Paz*, 144 Idaho 304, 307, 160 P.3d 743, 746 (2007)). This Court likewise freely reviews the construction of a statute. *Gibson v. Ada County*, 142 Idaho 746, 751, 133 P.3d 1211, 1216 (2006).

### V. ANALYSIS

#### A. The Subdivision Plat Does Not Dedicate the Road to Public Use

The County asserted that Burch Lane had been dedicated to public use, but it has been unclear throughout the course of litigation whether the County is relying on a statutory or common-law theory. Under either theory, however, the claim fails because the Reico Subdivision plat does not unequivocally dedicate Burch Lane to public use.

A common-law dedication requires the county to show "that 1) there has been a valid offer to dedicate real property to a public use, and 2) lots were subsequently sold or otherwise conveyed by instruments which specifically refer to such plat." *Worley Highway Dist. v. Yacht*

3

*Club of Coeur D'Alene, Ltd.*, 116 Idaho 219, 225, 775 P.2d 111, 117 (1989). Filing and recording a plat or map can establish the owner's intent to make a dedication to the public. *Id.* at 224, 775 P.2d at 116. The dedication in the plat, however, must be clear and explicit. *State v. Fox*, 100 Idaho 140, 147, 594 P.2d 1093, 1100 (1979).

Similarly, a statutory dedication under I.C. § 50-1309 requires a plat that unequivocally dedicates a road to public use. The Reico Subdivision plat was recorded in 1983. Section 50-1309 at that time permitted landowners to dedicate a portion of their property by recording a plat depicting "all streets and alleys shown on said plat" that is accepted by the appropriate public entity. I.C. §§ 50-1309, -1313 (1982).[2] Although this statute has since been amended several times, the plat has always had to demark public rights-of-way in order to dedicate them. *Harshbarger v. Jerome County*, 107 Idaho 805, 806–07, 693 P.2d 451, 452–53 (1984); *see* Act of Mar. 26, 1988, ch. 175, sec. 2, 1988 Idaho Sess. Laws 306, 307 (amending I.C. § 50-1309 to specifically require government approval, but still requiring a marked plat). In any event, there is no reason why a statutory dedication in a plat would have to be less clear and unequivocal than a dedication by common law. *Cf. Harshbarger*, 107 Idaho at 806, 693 P.2d at 452 (stating that a dedication must be "by an unequivocal act of the owner of the fee" (quoting 26 C.J.S. *Dedication* § 1 (1956))). Thus, this Court has previously held that where the plat depicts no public streets or rights-of-way, there can be no statutory dedication. *Armand v. Opportunity Mgmt. Co.*, 141 Idaho 709, 714, 117 P.3d 123, 128 (2005).

The parties do not dispute the fact that a subdivision plat for the Reico Subdivision was properly recorded. The dispute instead is whether there was an unequivocal dedication of Burch Lane in the plat. Because the plat does not clearly dedicate Burch Lane to public use, it is unnecessary to determine whether, under a statutory theory, the County correctly accepted the dedication.[3]

---

[2] In 1983, I.C. § 50-1309 provided:

> The owner or owners of the land included in said plat shall make a certificate containing the correct description of the land, with the statement as to their intentions to include the same in the plat, and make a dedication of all streets and alleys shown on said plat, which certificate shall be acknowledged before an officer duly authorized to take acknowledgments and shall be endorsed on the plat. The surveyor or engineer making the survey shall certify the correctness of the plat.

Act of Apr. 12, 1967, ch. 429, sec. 227, 1967 Idaho Sess. Laws 1249, 1322.

[3] Respondents also claim that the subdivision developers did not have the legal authority to dedicate Burch Lane because some of the parcels had already been sold off to third parties before the subdivision plat was recorded. The

To determine whether there was a dedication, this Court will interpret the plat like a deed, giving effect to the intent of the parties. *Sun Valley Land & Minerals, Inc. v. Hawkes*, 138 Idaho 543, 547, 66 P.3d 798, 802 (2003); *Daugharty v. Post Falls Highway Dist.*, 134 Idaho 731, 735, 9 P.3d 534, 538 (2000). The inquiry begins by determining whether a deed is ambiguous, which is a question of law subject to free review. *Union Pac. R. Co. v. Ethington Family Trust*, 137 Idaho 435, 438, 50 P.3d 450, 453 (2002). A document is ambiguous if it is reasonably subject to conflicting interpretations. *Neider v. Shaw*, 138 Idaho 503, 508, 65 P.3d 525, 530 (2003). Where a deed is unambiguous, "the parties' intent must be ascertained from the language of the deed as a matter of law." *C & G, Inc. v. Rule*, 135 Idaho 763, 766, 25 P.3d 76, 79 (2001).

The Reico Subdivision plat, as a matter of law, simply does not dedicate any roads to public use.[4] The map legend in this case depicts a style of dotted line for easements and public rights-of-way that is different from the style indicating a centerline of a private road. The line portraying Burch Lane on the map is a road centerline, not a public street or right-of-way. The map also specifically labels access or utility easements applicable to other private roads, but does not include any such label for Burch Lane. Accordingly, there has been no public dedication.

The plat map does state, however, that "any right, title and interest that [the developers] may have in the road rights-of-way as shown on this plat . . . is hereby dedicated to the use of the public." The plat nonetheless does not contain a dotted line anywhere representing a public easement or right-of-way. The County contends that the parties to the subdivision plat must have intended for there to be a public easement or right-of-way somewhere on the map because of the plat's language dedicating rights-of-way to public use and the fact that the legend contains a separate style of dotted line for such roads.

The County's interpretation is unreasonable. The County is correct that deeds must be interpreted to give effect to every part of the document. *Daugharty*, 134 Idaho at 735, 9 P.3d at 538 (citing *Twin Lakes Village Prop. Ass'n v. Crowley*, 124 Idaho 132, 137, 857 P.2d 611, 616

---

landowners are correct that the only party able to dedicate a road is someone who actually owns the land. *Allen v. Blaine County*, 131 Idaho 138, 141, 953 P.2d 578, 581 (1998). Here, however, the record is silent as to which parcels had actually been sold at the time the subdivision plat was recorded, making it impossible to determine if the developers still held legal title to all the land underlying Burch Lane. Even if the developers still had legal title to all the lots over which Burch Lane travels, the plat did not dedicate that road to public use.

[4] Although the map does depict Fruitvale Road, which was a preexisting public highway, it uses the line labeled "property boundary." It presumably uses the "property boundary" line because Fruitvale Road forms the subdivision's southerly property boundary.

(1993)).  Nonetheless, "[t]he intent of the owner to dedicate his land to public use must be clearly and unequivocally shown and must never be presumed." *Fox*, 100 Idaho at 147, 594 P.2d at 1100.  Other private-road centerlines appearing on the map are identical to the one depicting Burch Lane.  Even if this Court were to determine that there must be a public easement or right-of-way somewhere on the plat map, the County cannot explain why Burch Lane, and not some other road marked as private, would have to be a public road.  Moreover, the legend appearing on the plat map almost certainly is boilerplate included on many similar maps.  It contains distinct symbols for fences, canals, and stone monuments, none of which appear on this map either.  The County's interpretation would require this Court to arbitrarily assume these landmarks also exist somewhere in the subdivision.  The subdivision plat, as a matter of law, does not dedicate Burch Lane as a public right-of-way.

The County also argues that a woman named Mrs. Stover orally dedicated the road sometime between 1942 and 1974 when she owned the tract that later became the Reico Subdivision.[5]  The County relies on an affidavit from an area resident claiming that Mrs. Stover told the affiant she intended for the road to remain open to the public.  The County, however, admitted that there is no evidence in the record that it had accepted any dedication by Mrs. Stover.  Even if there had been an acceptance, this paraphrased statement attributed to an absent witness does not unequivocally create a public dedication.  There is no evidence that Mrs. Stover stated her present intent to dedicate the road to the County, but rather that she simply intended to allow the public to continue using the road for recreation.  Her statement, therefore, would not generate a genuine fact issue as to dedication.

### B. There Is No Material Issue of Fact Supporting the County's Claim that Burch Lane Was Acquired by Prescription

A county may also gain control of a roadway by prescription under I.C. § 40-202(3) if the road is publicly used and maintained for a sufficient length of time.[6]  "[A] public road may be acquired: (1) if the public uses the road for a period of five years, and (2) the road is worked and

---

[5] Mrs. Stover's first name does not appear in the record, nor did it surface during oral argument.

[6] The Idaho Code provides:

> Highways laid out, recorded and opened . . . by order of a board of commissioners, and all highways used for a period of five (5) years, provided they shall have been worked and kept up at the expense of the public, or located and recorded by order of a board of commissioners, are highways.

I.C. § 40-202(3); *see also id.* § 40-109(5) (providing an identical definition for a public "highway").

6

kept up at the expense of the public." *Ada County Highway Dist. v. Total Success Inv., L.L.C.*, 145 Idaho 360, 365, 179 P.3d 323, 328 (2008) (citing I.C. § 40-202(3)). The County must prove these elements by a preponderance of the evidence. *Floyd v. Bd. of Comm'rs*, 137 Idaho 718, 724, 52 P.3d 863, 869 (2002).

First, there is insufficient evidence as to whether there was sufficient public use of the road. This Court has repeatedly found that casual or sporadic use is not enough—the use must be regular and continuous. *See Total Success Inv.*, 145 Idaho at 367, 179 P.3d at 330 (finding public use where a number of people routinely used an alley to access their businesses); *Floyd*, 137 Idaho at 724, 52 P.3d at 869 (stating that a road acquired by prescription was "regularly and continuously used by the public" for recreation); *Kirk v. Schultz*, 63 Idaho 278, 282–84, 119 P.2d 266, 268–69 (1941) (holding that "casual and desultory" use by "miners, hunters, fishermen, and persons on horseback" even of a well-marked road was not public use). The County provided affidavits from three Adams County residents attesting to the fact that, for at least twenty years, local residents used Burch Lane to access the Payette National Forest for recreational or personal purposes such as hunting, berry picking, and wood gathering. There is also evidence of individual incidents when construction equipment traversed the road, such as an occasion when Idaho Power used it to build power lines in the area. Even so, nothing in the record indicates whether this activity occurred frequently or with any consistency, especially over a five-year span.

Furthermore, the record does not suggest that any public access was hostile to Respondents' ownership. "[W]here the owner of real property constructs a way over it for his use and convenience, the mere use thereof by others which in no way interferes with his use will be presumed to be by way of license or permission." *Chen v. Conway*, 121 Idaho 1000, 1005, 829 P.2d 1349, 1354 (1992) (quoting *Simmons v. Perkins*, 63 Idaho 136, 144, 118 P.2d 740, 744 (1941)). Respondents apparently never did anything to keep the public off the road prior to putting up the signs that triggered this lawsuit, nor does the County suggest that occasional traffic into the national forest interfered with Respondents' ownership of the road. Respondents very well could have permitted such access to the forest. In short, there is simply not enough evidence to create a fact issue as to public use.

There is also no issue of material fact to support the County's claim that it has maintained the road for any five-year span of time. There is absolutely no evidence anywhere that the

7

County has ever performed any maintenance on or improved Burch Lane before Respondents filed this lawsuit. Even if such evidence existed, nothing in the record suggests that the county maintained the road at the same time the public was using it. The County nonetheless contends that, since the public has apparently been able to use the road for so long, no public maintenance was ever necessary. It asserts that it can still acquire a road by prescription without maintaining it if no repairs were needed to keep the road safe for travel.

The County is correct that there is "no mandated level of maintenance other than 'as necessary.'" *Floyd*, 137 Idaho at 725, 52 P.3d at 870; *accord State v. Berg*, 28 Idaho 724, 726, 155 P. 968, 969 (1916). This Court has specifically held that "[v]ery few roads require work throughout their entire length," and that "[o]ur statute does not require work to be done upon a part of a highway not needing work, in order to acquire a right of way by prescription." *Gross v. McNutt*, 4 Idaho 286, 289, 38 P. 935, 936 (1894); *see also Cox v. Cox*, 84 Idaho 513, 521, 373 P.2d 929, 933 (1962) (reaffirming *Gross*).

Even so, the County can point to nothing in the record suggesting that the road did not need maintenance over a period of any length prior to this lawsuit. A nonmoving party cannot resist a motion for summary judgment by resting on "mere allegations or denials of his pleadings." I.C.R.P. 56(e). The moving party is entitled to summary judgment if the nonmoving party cannot raise a question of fact for an element that it would have to establish at trial. *Baxter v. Craney*, 135 Idaho 166, 170, 16 P.3d 263, 267 (2000). The County provides no evidence that road maintenance was unnecessary over the twenty-five years preceding this lawsuit. It never sent any crews to inspect the road and determine if it needed any work and, consequently, it cannot even say what condition the road was in over the years prior to the events in this lawsuit. Instead, the record contains affidavits from current and former landowners attesting that they had actually maintained the road. Prior to the mid-1980s, the road was overgrown and hardly accessible by vehicle. At that time, the Lattins' predecessor in interest, along with Idaho Power, first cleared out the road. Respondent Kathy Chase also attested that she also improved the road in 1998. Respondents alone have maintained and improved the road since the Reico Subdivision was created.

Since the County has the burden at trial to prove that it would have maintained the road if such work was needed, there is no issue of material fact in support of this element. *Total Success Inv.*, 145 Idaho at 365, 179 P.3d at 328. Neither the County, nor the "public" at large, could gain

8

a prescriptive easement without the public maintenance required by statute. *State v. Fox*, 100 Idaho 140, 146, 594 P.2d 1093, 1099 (1979). The district court therefore correctly granted summary judgment to Respondents.[7]

## C. Respondents Are Entitled to Attorney Fees on Appeal

Respondents do not cite any statutes in support of their request for attorney fees. *PHH Mortgage Servs. Corp. v. Perreira*, 146 Idaho 631, 641, 200 P.3d 1180, 1190 (2009) (stating that statutory authority is required for an award of attorney fees). Instead, they request attorney fees under I.A.R. 11.2, which in relevant part provides:[8]

> The signature of an attorney or party constitutes a certificate that the attorney or party has read the notice of appeal, petition, motion, brief or other document; that to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If the notice of appeal, petition, motion, brief, or other document is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the notice of appeal, petition, motion, brief or other document including a reasonable attorney's fee.

This Court has held that "[a]lthough an attorney's purpose in filing an appeal may not always appear clear from the record, this Court can infer intent and purpose from the attorney's actions and the surrounding circumstances." *Fritts v. Liddle & Moeller Constr., Inc.*, 144 Idaho 171, 176, 158 P.3d 947, 952 (2007) (quoting *Neihart v. Universal Joint Auto Parts, Inc.*, 141 Idaho 801, 803, 118 P.3d 133, 135 (2005)). A signed legal document violates Rule 11.2 if (1) it is not well grounded in fact; (2) it is not warranted by existing law or a good-faith extension, modification, or reversal of existing law; and (3) it was interposed for an improper purpose. *Read v. Harvey*, 147 Idaho 364, 371, 209 P.3d 661, 668 (2009).

---

[7] The County also contends that summary judgment was improper because the district court made no specific findings of fact regarding its prescription theory. Regardless of what the district court decided about the County's prescription claim, its decision "should be affirmed if the grant of the summary judgment order was proper on any ground." *Richard B. Smith Real Estate, Inc. v. Knudson*, 107 Idaho 597, 599, 691 P.2d 1212, 1214 (1984).

[8] In their brief on appeal, Respondents incorrectly cited I.A.R. 11.1 instead of 11.2. They apparently made this error merely because I.A.R. 11.2 had previously been numbered I.A.R. 11.1, but was renumbered several months prior to Respondents filing their brief. Respondents also cited *Read v. Harvey*, a case dealing specifically with sanctions under this rule just before the renumbering became effective. 147 Idaho 364, 370–71, 209 P.3d 661, 667–68 (2009). Thus, the authority for Respondents' request is clear despite the citation error.

First, as discussed above, the County utterly lacked any factual basis for bringing this appeal. It had no prescription claim because it never maintained the road. For its dedication claim, it relied on a plat map that unequivocally did not portray Burch Lane as a public road. Next, the County admitted that it had never even checked to see if road maintenance was necessary, undermining any reasonable legal argument in favor of its prescription theory or of extending existing law to apply to this case. Last, although Respondents initiated this lawsuit, they did so in response to the County's threats to forcibly remove their signs and to pursue criminal sanctions against them. In such a stark absence of any reasonable factual or legal justification for its actions, this Court must conclude that the County has acted with an improper purpose under I.A.R. 11.2 by harassing Respondents and needlessly prolonging this litigation. Attorney fees are therefore awarded against the County to Respondents.

## VI. CONCLUSION

The district court correctly granted Respondents' motion for summary judgment because there is no genuine issue of material fact to support the County's claims that Burch Lane is a public highway. Respondents are entitled to attorney fees on appeal because the County has pursued this case for an improper purpose. The judgment of the district court is affirmed. Costs to Respondents.

Chief Justice EISMANN, Justices BURDICK, HORTON and Justice *pro tem* TROUT, **CONCUR.**