J. JONES, J.,
concurring in part and dissenting in part.
I concur in Part V.A.1 of the Court’s opinion, but dissent with regard to Parts V.A.2 and V.B. It is my view that the plat is ambiguous as to the status of the “60 ft. roadway and utility right-of-way” (“Easement”), and that the Woolstenhume affidavit should not have been excluded based upon the parol evidence rule.
While the Court correctly states the law applicable to a common law dedication, it does not appear that the plat clearly and unequivocally offers to dedicate the Easement as a public street or road. There are simply too many questions regarding the intent of the property owners with respect to the Easement when they signed the plat. The factors that make their intent ambiguous are:
(1) The roads dedicated to the public on the plat are named (Sawtelle Peak Road and Huckleberry Loop), while the Easement bears no name. Section 1.03.100, Appendix L, of the Fremont County Development Code states that a plat shall contain “[t]he names of all streets.” Further, Section 1.03 requires that, “All final plats submitted shall be prepared in compliance with Chapter 13, *214 Title 50 of the Idaho Code.” Idaho Code § 50-1304(2)(b) requires that a plat show “each street named.” If an easement or right-of-way is not given a name on a plat, it is likely not intended to be a street.
(2) I.C. § 50-1304, which is contained in Chapter 13, Title 50 and which specifies the essentials of a municipal plat, utilizes definitions set out in I.C. § 50-1301. That code section contains definitions for “easement,” “private road,” “public right-of-way,” “public street,” and “street.” Each of those definitions contains different elements. “Easement” is “[a] right of use, falling short of ownership, and usually for a certain stated purpose.” I.C. § 50-1301(2). On the other hand, “public street” is “a road, thoroughfare, alley, highway or bridge under the jurisdiction of a public highway agency.” The plat does not unequivocally tell us which definition applies to the Easement. On the plat map, the Easement is called “road & utility easement,” while on the owners’ certificate of dedication, it is called “roadway and utility right-of-way.”
(3) The owners’ certificate of dedication states that the right-of-way “will allow sewer, water, electrical, telephone and other utilities to be installed in the right of way.” Were this a public road, that statement would be unnecessary. Numerous state statutes provide that public utility lines may be installed in public roads, streets and highways. I.C. § 62-1101 (natural gas lines); I.C. § 62-705 (electric power lines); I.C. § 62-701 (telephone lines); I.C. § 30-802 (water lines); I.C. § 40-2308 (gas and water lines in cities). If the Easement is truly an easement and not a public road, the language has meaning. If the Easement is truly a public street, the language is superfluous and meaningless. To give meaning to the language in the dedication, it must be considered an easement.
(4) The owners’ certificate on the plat, which contains the dedications intended by the owners, states “that all roads are hereby dedicated to the public with right of access being limited by the homeowners association until such time as accepted by Fremont County.” The owners’ certificate deals with the Easement in a separate statement, saying “that the dedicated 60 ft. roadway and utility right-of-way will allow sewer, water, electrical, telephone and other utilities to be installed in the right of way.” The fact that dedicated roads and the Easement are dealt with separately in the owners’ certificate of dedication indicates an intention by the owners to draw a distinction between them.
(5) The legend on the plat depicts an “easement as described” with two parallel lines connected by crosshatch marks. The Easement is shown with such crosshatching. No dedicated public roads in the subdivision contain crosshatching, while all dedicated easements do. Further, the roads clearly dedicated to public use do not overlay portions of lots, while the Easement does, crossing over the south 30 feet of Lot 4 and the north 30 feet of Lot 3. In Lattin v. Adams County, 149 Idaho 497, 236 P.3d 1257 (2010), this Court declined to find a public road dedication where the alleged road did not comport with the map legend. In that case the plat depicted Burch Lane but did not identify it as a public easement or right-of-way. Id. at 499, 236 P.3d at 1259. According to the Court:
The map legend in this case depicts a style of dotted line for easements and public rights-of-way that is different from the style indicating a centerline of a private road. The line portraying Burch Lane on the map is a road centerline, not a public street or right-of-way. The map also specifically labels access for utility easements applicable to other private roads but does not include such label for Burch Lane. Accordingly, there has been no public dedication.
Id. at 501,236 P.3d at 1261. In this case, the Easement is depicted with crosshatching, while the roads clearly dedicated to public use are not crosshatched. Again, the part of the owners’ certificate dedicating it as an easement is separate and apart from the part of the owners’ certification dedicating public roads.
(6) The language used for the Easement, both per the designation on the plat and in the owners’ certificate, lends itself to differing interpretations. On the plat map it is called “60' road & utility easement” and in the owners’ certificate it is called “60 ft. *215 roadway and utility right-of-way.” Either description lends itself to two different interpretations. On the plat, we could have either a road, as well as a utility easement, or we could have an easement for road and utility purposes. The latter interpretation appears to be more reasonable because the map legend indicates that easements are depicted by erosshatching and the crosshatehing on the Easement is 60 feet in width. Since “60” appears before both “road” and “utility” on the plat map, all of those words modify “easement.” In the owners’ certificate we could have either a roadway, as well as a utility right-of-way, or we could have a right-of-way for roadway and utility purposes. Again, the latter interpretation is more reasonable because the “60 ft.” at the beginning of the phrase pertains to both “roadway” and “utility” and all three words modify “right-of-way.”
(7) There is a difference between the plat map, which uses the word “road,” and the owners’ certificate of dedication which uses the word “roadway.” The wording of the owners’ certificate, which states the intention of the owners with regard to dedication, takes precedence over any conflicting language on the plat map. It is obvious that there is a difference between “road” and “roadway,” and it is of note that the owners did not dedicate any roadways to public road uses, choosing instead to dedicate a roadway and utility right-of-way. On the other hand, the only other use of the word “roadway” anywhere on the plat does lend some support to the district court’s holding. Although not couched in dedicatory language, the owners’ certificate says “that the developer/homeowners association will maintain all roadways until such time as Fremont County accepts said maintenance.” It is not clear why Fremont County would accept maintenance of the Easement unless it was for purposes of a road.
With the foregoing inconsistencies and ambiguities, summary judgment is simply inappropriate. This is a matter that should be determined following the introduction of evidence at trial.
Because it appears the plat is ambiguous as to the status of the Easement, I believe that parol evidence is appropriate to determine the intent of the owners. Therefore, I do not agree that the Woolstenhume affidavit should have been excluded based upon the parol evidence rule. However, the Court correctly notes that the affidavit merely states the affiant’s intent when drafting the plat. He does not state that he drafted the plat to comply with instructions given by the owners, or that the plat was drafted in accordance with industry standards or practices. Woolstenhume’s own intentions are not relevant, while the owners’ intentions are or while accepted industries standards and practices might well be. The affidavit was excluded for the wrong reason, but its exclusion may well have been justified on other grounds.
Justice HORTON concurs.