**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 45553**

| | | |
|---|---|---|
| **EAST SIDE HIGHWAY DISTRICT, a** | ) | |
| **political subdivision of the State of Idaho,** | ) | |
| | ) | |
| **Plaintiff/Cross-Defendant/ Appellant,** | ) | |
| | ) | **Boise, September 2019 Term** |
| **v.** | ) | |
| | ) | **Opinion Filed: December 11, 2019** |
| **GREGORY K. DELAVAN and ELLEN J.O.** | ) | |
| **DELAVAN, husband and wife,** | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| **Defendants/Cross-Claimants/** | ) | |
| **Respondents.** | ) | |
| | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Lansing L. Haynes, District Judge.

The decisions of the trial court are affirmed in part, reversed in part, and vacated in part.

James, Vernon & Weeks, P.A., Coeur d'Alene, for appellant East Side Highway District. Susan P. Weeks argued.

John F. Magnuson, Coeur d'Alene, for respondents Gregory and Ellen Delavan. John F. Magnuson argued.

_____

STEGNER, Justice.

This case involves competing claims to real property asserted by adjacent property owners: The East Side Highway District (the District) and Gregory and Ellen Delavan (the Delavans). The parties dispute the location of their common boundary relating to a portion of a road, Boothe Park Road, which includes a boat ramp located on the shore of Lake Coeur d'Alene.

The District asserts a claim to the disputed property under two theories: First, the District claims there was a boundary by agreement that was established by the location of a fence that was erected by the Delavans' predecessor in interest. Second, the District claims that Boothe

1

Park Road and the boat ramp at its termination is a public highway pursuant to Idaho Code section 40-202(3). In response, the Delavans claim that the boat ramp is on their property, and its use by the public has always been, and remains, permissive. Further, the Delavans assert that the fence which was erected by their predecessor in interest was intended to act as a barrier, not a boundary.

After two bench trials, the trial court ruled in favor of the Delavans, finding that the public's use of the boat ramp had been permissive. As a result, the trial court ruled that the District did not have a right to a public easement based on Idaho Code section 40-202(3). Further, the trial court found that the fence had been erected as a barrier, not a boundary. Instead, the trial court found that the intention of the parties at the time the disputed property was conveyed to the Delavans demonstrated that the Delavans owned the property in dispute. The District timely appealed.

For the reasons set forth in this opinion, we hold that there is substantial and competent evidence to support the trial court's findings that there was no boundary by agreement and that the Delavans own the property in dispute. However, we vacate the trial court's order granting summary judgment in favor of the Delavans because there is no hostility requirement in Idaho Code section 40-202(3). Accordingly, the case is being remanded to determine whether the District has a public easement under Idaho Code section 40-202(3).

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A. The real property in dispute.**

1. Plat of the Lakeside Addition to Sunnyside Subdivision.

In 1910, John Boothe (Boothe) and others prepared and recorded the Plat of Lakeshore Addition to Sunnyside (the Plat). The Plat includes the lake front property in dispute. The Plat created thirty-seven lake front lots on Lake Coeur d'Alene, numbered 2 through 38. There is also an unnumbered lot between Lot 18 and Lot 19.

The Plat has had several notable problems. From the outset, the lots were incorrectly numbered. This is first evidenced in a 1940 deed from Boothe, which conveyed: "All that portion of Lots Thirty-two (32) and Thirty-three (33) of Lakeshore Addition to Sunnyside . . . according to the recorded plat thereof, . . . *being designated upon the official map of said highway as Lots Thirty-three (33) and Thirty-four (34)* and lying North and East of Lot Thirty-four (34) (highway

2

map Lot 35) of said addition[.]" (Italics added.) This inaccuracy in the lot numbers was also noted in a 2001 survey conducted by Scott Rasor.

> "Mr. John Booth [sic], one of the original plattor's [sic], stated that an error of 100 feet had been made in locating one of the lots and that this accounts for the difference in lot numbers."

> The effect of the differences in lot numbering is to shift the numbers 100 feet north, for example, the originally platted lot 28 becomes lot 29.

Throughout the years, surveyors have noted the incorrect lot numbers. However, the original Plat itself has never been amended or corrected.

The incorrectly numbered lots caused an additional problem. It appears that each lake front lot was intended to be 100 feet wide as testified to by Geremy Russell (Russell), the District's expert witness and surveyor. Further, Rasor's 2001 survey noted, "the lots for Lakeshore Addition to Sunnyside were laid out from prior surveys and the original Plat at 100 feet wide and with parallel lines." During trial, the parties argued regarding at what point on the plat the 100 feet was measured. The Delavans argued that it was 100 feet of frontage along Lake Coeur d'Alene. The District contended that the lots were intended to be measured from the north and south parallel boundaries, not the meander lines of Lake Coeur d'Alene.

2. <u>The 1949 deed from John and Gertrude Boothe to Oliver and Edna Delavan.</u>

Three generations of the Delavan family have owned the real property in dispute. Oliver and Edna Delavan are the first generation of property owners and are the parents of Jack and Frank Delavan. Gregory Delavan is Jack's son and Oliver's grandson. For the sake of clarity, first names will be used when referring to the Delavans as individuals.

In 1945, Louis Wasmer executed a warranty deed conveying to Oliver and Edna Lots 19 through 22 according to the Plat. Oliver subsequently sold Lot 22, retaining Lots 19 through 21. According to Jack's testimony, Oliver began building a house on the Delavan property in late 1946.

On August 17, 1949, John and Gertrude Boothe (collectively the Boothes) conveyed to Oliver and Edna a portion of the unnumbered lot located between Lots 18 and 19. The Boothes deeded the following described property to Oliver and Edna:

> Commencing at the Northwest corner of Lot 19, as originally platted, Lakeshore addition to Sunnyside, section, 33, Twp 50 North, Range 3 W B M thence North 79° 58' East to the West boundary of the existing county road; *thence along the existing right of way line of said county road to its intersection with the meander line of Lake Coeur d'Alene*; thence Southerly along the meander line of

3

said Lake Coeur d'Alene, to the point of beginning, said land being in the county of Kootenai, State of Idaho.

The District's expert, Russell, stated that the deed was likely a corrective measure because Lot 19, as noted on the Plat, was not 100 feet wide.

This appeal largely turns on the italicized language above in the 1949 deed: "thence along the existing right of way line of said county road to its intersection with the meander line of Lake Coeur d'Alene[.]" The current existing road is known as Boothe Park Road. Although he did not know where the county road existed in 1949, Russell testified the best indication of its location was the Plat, which he stated is harmonious with how the road exists today. Further, Russell testified that there was no evidence that the road existed in a different location today than in 1949. The Delavans' surveyor and expert witness, Ernest Warner, also testified he did not know where the existing county road was located in 1949. Warner testified the existing public road today is similar to the road depicted in the Plat.

During trial, Marilyn Moore, Boothe's granddaughter who was born in 1936, testified that Boothe Park Road went to the boat ramp, just as it did in 1949. (Moore had visited the area in 2015.) However, Jack (Oliver's son) testified[1] that the road did not continue to the boat ramp in 1949 because the boat ramp was not built until 1955. Further, Jack stated that "Boothe Park [Road] never . . . went past the corner of [the Delavans'] property[.]"

The trial court also admitted in evidence Ray Kindler's 1956 unrecorded survey, which showed the roadway as terminating at "Boothe Park," at a concrete monument near the northeast corner of the Delavan property. According to both Jack and Kindler, the road did not extend beyond that point.

3. The creation of Boothe Park.

On January 21, 1955, the Boothes executed a quitclaim deed, by which they conveyed a portion of the unnumbered lot between Lots 18 and 19, to the Coeur d'Alene Highway District, the predecessor in interest to the East Side Highway District. The deed described the property as a parcel of land 120 feet wide and 150 feet deep measuring from the meander line of Lake Coeur d'Alene. However, this deed was not without its own problems. For example, by all accounts the

---

[1] Jack's testimony was introduced at trial through a video deposition. The parties stipulated to the introduction of Jack's video deposition at trial due to his advanced age and poor health.

4

property was not 120 feet wide. In the survey performed by Kindler in 1956, he noted the width of the property to be only 102.5 feet.[2]

4. Construction of the boat ramp.

In late January 1955, the Coeur d'Alene Highway District constructed a sixty-by-twelve-foot concrete boat ramp on the property in dispute. According to Jack, Oliver reached an agreement with Bill Stark, the secretary of the Coeur d'Alene Highway District, to allow the construction of the boat ramp on Oliver's property.

Further, Patrick Seale (Seale), who purchased Lots 17 and 18 in 1982 and 1983, testified that he personally observed Oliver performing physical work on the boat ramp. Seale testified over objection that Oliver said that the boat ramp was located on his property, but he allowed the public to use the ramp. Jack testified that he continued this practice.

5. The Delavans' fence.

Shortly after the boat ramp was constructed, Oliver built a fence along the south side of the boat ramp.[3] Jack testified that Oliver built the fence to act as a barrier to keep the public who were using the boat ramp from venturing onto the private section of his property. Jack testified that some old posts and remnants of a fence existed when Oliver bought the property. The District argued that the previous posts likely outlined the boundary of Oliver's property.

At a commissioner's meeting in 1956, given the issues with the boundaries as noted above, the Coeur d'Alene Highway District decided to "straighten out all the property lines of Boothe Park." The Coeur d'Alene Highway District hired surveyor Ray Kindler for that purpose. Kindler's survey depicted a line between "Boothe Park" and the Delavan property that is consistent with the fence line.

On October 5, 1956, Kindler sent J. Ward Arney[4] an unsigned cover letter associated with his survey, noting that "[i]n order not to cause any trouble with the adjacent property owners, Walker, Delavan and Wiks, we followed [multiple] old fence lines as closely as possible." However, there is no evidence that Oliver ever saw the Kindler survey (as it was never recorded) or that Kindler had ever contacted Oliver while Kindler was surveying the

---

[2] This 102.5 feet also includes the 34.2 feet of lake front at issue in this appeal.

[3] It is clear from the photographs in a 1955 newspaper article describing the construction of the boat ramp that there was no fence at the time the boat ramp was constructed.

[4] The record indicates that J. Ward Arney was a local attorney in Coeur d'Alene. However, the extent of Arney's representation with respect to the disputed property is unclear.

property. Rather than straightening out all the property lines, as originally intended, Kindler's survey had little effect on the uncertain boundaries.

6.  Dissolution of the Coeur d'Alene Highway District.

The Coeur d'Alene Highway District was dissolved and reorganized in 1971 by order of the Kootenai County Board of Commissioners. East Side Highway District is the successor in interest of the Coeur d'Alene Highway District.

7.  The 1977 Department of Lands encroachment permit to Kootenai County.

In 1977, Kootenai County submitted an application to the Idaho Department of Lands ("IDL") to extend the concrete boat ramp. The attachments to Kootenai County's application appear to show that the boat ramp was on the Delavan property. During the first trial regarding the disputed property, Jim Brady, a specialist employed by IDL, was asked about—and handwrote on—the application to show that the boundary on the document submitted by Kootenai County indicated that the Delavans owned the property on which the boat ramp had been built.

8.  The Delavan property is conveyed to Gregory and Ellen.

Oliver and Edna passed away in the early 1990s.[5] In October of 1991, Jack and Frank, acting as co-personal representatives of the estates of their parents, Oliver and Edna, executed two deeds of distribution. First, they transferred the property to Edna's estate and then, from Edna's estate to Jack.

On January 10, 1995, Jack and Beverly (Jack's wife) conveyed by warranty deed certain property to Gregory and Ellen Delavan, their son and daughter-in-law. The deed described the property conveyed in 1949 by quitclaim deed from the Boothes to Oliver and Edna. Another warranty deed from Jack and Beverly to Gregory and Ellen was executed December 30, 1997. This second deed conveyed the same property that the previous 1995 deed conveyed. It is unclear why the same property was conveyed more than once.

9.  Proceedings before the Kootenai County Board of Equalization.

In 1992, after the property had been conveyed to Jack, he appealed his property tax assessment for Lots 19 through 21. Jack informed Kootenai County that he was being assessed for 300 frontage feet (consistent with three one-hundred-foot-wide lots). However, Jack argued

---

[5] It is unclear from the record exactly when Oliver and Edna passed away.

6

he should only be assessed for 266 feet because of his limited use of the boat ramp. In response, the county assessor recommended a valuation that would place a portion of Jack's property into the "right of way" category. The Board of Equalization accepted the assessor's recommendation.

A similar issue arose in 1995, after Gregory had acquired the property. Gregory filed an appeal from the valuation of Lots 19 and 20 because the boat ramp was located on Lot 19. The Kootenai County Board of Commissioners, sitting as the Board of Equalization, entered an order with the following findings of fact:

> [Gregory] stated the subject property is located adjacent to Boothe Park which [has] public access to Lake Coeur d'Alene. Thirty-four feet of lake frontage is occupied by the boat ramp which belongs to [Gregory].

10. <u>The disagreement between the District and Gregory and Ellen.</u>

On December 16, 2003, the District held a meeting with Gregory in an effort to resolve the issues regarding ownership of the land on which the boat ramp had been built. Gregory stated that the boat ramp was on his property and that the District only had the right to use that property due to a verbal agreement between Oliver and the Coeur d'Alene Highway District. During the meeting, Bruce Anderson, the county surveyor, said he thought that the Kindler survey done in 1956 controlled who owned what property because the deeds were unclear. The District told Gregory that it would be his "responsibility to prove to the District that the actual boat launch area belonged to him."

On July 13, 2009, the District posted an encroachment notice on a wall constructed by the Delavans near the boat ramp. On July 22, 2009, the Delavans disputed the encroachment notice, arguing that the wall and fence were entirely on their property. A lawsuit followed, which is the basis of this appeal.

**B.      Course of proceedings.**

On April 24, 2012, the District filed its complaint to quiet title and for declaratory judgment against the Delavans. The District asserted two causes of action. First, the District sought a declaratory judgment determining that Boothe Park Road, including the boat ramp, was a public road pursuant to Idaho Code section 40-202(3). Second, the District asserted that it was entitled to ownership of the roadway, including the boat ramp, due to a "boundary by agreement," alleging that Oliver and representatives of the District's predecessors in interest had agreed that the fence was the common boundary of the property. On July 13, 2012, the Delavans filed their Answer, Affirmative Defenses, and Counterclaim. The Delavans asserted

7

counterclaims for trespass, quiet title, and declaratory relief, arguing that they owned the disputed property.

On July 11, 2013, Jack was deposed on video. At the time of his deposition, Jack was eighty-four years old. The parties stipulated to the introduction of Jack's video deposition at trial. Jack passed away on December 26, 2015, a few weeks after the first trial.

On November 12, 2014, the District moved to strike portions of the affidavits of Gregory Delavan and Ernest Warner, as well as portions of Jack Delavan's deposition. The trial court entered an order, striking portions of Gregory Delavan's affidavit. In addition, the trial court struck portions of Jack Delavan's deposition testimony.

The parties stipulated to bifurcate trials for various claims. The parties agreed that the first trial would be limited to the issues relating to the boundary by agreement claim. The remaining issues would be resolved in the second trial. The trial court entered an order separating the trials based on the parties' stipulation.

The day before the first trial, the District filed another objection to portions of Jack Delavan's deposition. On December 1, 2015, after the trial but prior to its decision, the trial court largely denied the request to strike portions of Jack's deposition. However, it excluded the following statement by Jack as hearsay: "[Oliver] indicated it was on his property and he let the highway district use it on a handshake deal with Mr. Stark of the highway district."

The first trial regarding the boundary by agreement issue was held on November 16, 17, and 18, 2015. Following post-trial briefing, the trial court entered its Findings of Fact, Conclusions of Law, and Verdict on March 28, 2016. (Although the trial court's decision states that it was a verdict, a verdict is the result of a jury's deliberative process. *Verdict*, BLACK'S LAW DICTIONARY (11th ed. 2019).) The trial court concluded that the District had failed to prove either required element of a boundary by agreement. Further, the trial court found that the "[u]se of the boat launch by all parties other than [the Delavans] since its construction, has been permissive." As a result, the trial court ruled in favor of the Delavans. Following the decision, only two issues remained: (1) whether the road was a public highway pursuant to Idaho Code section 40-202(3), and (2) the location of the parties' common boundary.

On May 26, 2016, the Delavans filed a motion for partial summary judgment on the District's claim that it controlled a public easement pursuant to Idaho Code section 40-202(3). The Delavans argued that, given the trial court's finding that the use of the boat ramp had been

8

permissive, the District could not establish that the boat ramp was a public highway pursuant to Idaho Code section 40-202(3). The District opposed the motion. On July 11, 2016, the trial court entered its order granting the Delavans' motion for partial summary judgment. The trial court agreed that because use of the boat ramp had been permissive, the District could not gain a prescriptive right pursuant to Idaho Code section 40-202(3). In granting summary judgment, the trial court concluded that the District was required to prove that its use had been "hostile" to the Delavans and that because this use had always been with permission, hostility could not be shown.

The trial court proceeded with the second trial regarding the location of the common boundary. The second trial was held on May 15 and 16, 2017. On June 19, 2017, the trial court entered its Findings of Fact, Conclusions of Law, and Verdict. The trial court determined that the 1949 deed from the Boothes to Oliver and Edna was ambiguous because the "existing county road" was indeterminable. The trial court then determined that the intent of the parties when the deed was executed in 1949 was to provide the Delavans with 300 feet of frontage on Lake Coeur d'Alene as a corrective measure. As a result, the trial court ruled in favor of the Delavans.

On September 12, 2017, the trial court entered judgment in favor of the Delavans. The trial court issued an Amended Judgment because its initial judgment did not comply with I.R.C.P. 54(a). Ultimately, a Second Amended Judgment was entered to correct an inadvertent omission in the legal description of the property. The District timely appealed from the Second Amended Judgment.

## C. Illustration of the property in dispute.

Exhibit 1 to this opinion is one of the attachments to the trial court's Second Amended Judgment. The property in dispute is indicated in light grey. The area indicated in dark grey is the property at issue in the District's challenge to the Second Amended Judgment.

## II. STANDARD OF REVIEW

The standard of review varies for each issue and will be discussed in the relevant subsections below.

## III. ANALYSIS

### A. The trial court abused its discretion in admitting several hearsay statements; however, not all of the statements challenged by the District were inadmissible.

The District challenges several of the trial court's evidentiary rulings. As these evidentiary rulings impact the remainder of our analysis, we will address those first. We hold

9

that the trial court abused its discretion when it admitted Jack's statement regarding the fence, and Patrick Seale's testimony concerning Oliver's statement about the ownership of the boat ramp. Accordingly, those statements will not be referenced in our review of whether the trial court's factual findings were supported by substantial and competent evidence. However, we hold that the trial court did not abuse its discretion in admitting statements made by Gregory Delavan regarding the fence. As a result, those statements may be referenced in our review of the trial court's findings.

This Court will not reverse an evidentiary ruling unless (1) the ruling is an abuse of the trial court's discretion and (2) the ruling affects the substantial rights of the party alleging the error. *Ballard v. Kerr*, 160 Idaho 674, 693, 378 P.3d 464, 483 (2016) (citing *Van v. Portneuf Med. Ctr., Inc.*, 156 Idaho 696, 701, 330 P.3d 1054, 1059 (2014); I.R.E. 103(a); I.R.C.P. 61).

To determine whether the trial court abused its discretion, this Court analyzes "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (citation omitted).

1. The trial court abused its discretion in admitting Jack Delavan's statements which were attributable to his father.

The District contends that Jack Delavan's testimony in his video deposition regarding his father's statements about the purpose of the fence was inadmissible hearsay and the trial court improperly admitted the statements. Jack's deposition contained the following testimony:

Q. [By Magnuson] . . . [D]id your father ever indicate to you that he had agreed with Mr. Stark or the highway district that the [fence line] was the boundary between the [D]istrict's property and your father's property?

A. No. . . . [T]he reason my father built the fence there was kids swimming and whatnot, people pretty soon were slopping over on his dock, and he didn't want them on there because if something happens, why all at once he's in trouble, so that's why the fence was put up.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. I.R.E. 801(c). A "statement" for hearsay purposes is an oral or written assertion or nonverbal conduct if it is intended as an assertion. I.R.E. 801(a). Here, given the context of the question posed—"[D]id your father ever indicate"—it was intended to elicit an answer regarding what Jack's father told him about the reasons for the fence. Consequently, the question sought a

10

hearsay response. To be admissible, the hearsay statement would need to fall within a hearsay exception.

Although the trial court provided limited reasoning, it appears that it found that the initial response of "no" to be a non-statement and was therefore not hearsay. The trial court did not abuse its discretion in this ruling. However, the trial court only addressed whether the remainder of the testimony constituted a non-responsive narrative; it failed to analyze whether the remainder of Jack's statement constituted inadmissible hearsay.[6] Accordingly, the trial court abused its discretion in admitting the evidence without undertaking the proper analysis.

Further, no hearsay exception applies to the statement. Below, the Delavans argued that the statement was admissible as a statement against interest pursuant to I.R.E. 804(b)(3) or under the residual exceptions pursuant to I.R.E. 803(24) and 804(b)(6). However, none of these exceptions applies. First, the statement is not one that is against interest. Oliver's statement that he built the fence to keep children off other portions of his property does not open him up to the possibility of civil action. It is a self-serving statement, not one against interest. Further, the statement does not fall within either of the residual exceptions because Oliver's statement does not generally have the "equivalent circumstantial guarantees of trustworthiness" that would "best serve the purposes" of hearsay rules. *See* I.R.E. 803(24), 804(b)(6). Accordingly, the trial court abused its discretion in admitting Jack's testimony about Oliver's statement.

Finally, the decision affected the District's substantial rights. The statement helped establish that the fence was built as a barrier, not a boundary. It was one of the facts relied on by

---

[6] It is important to note that the trial court ruled that the District failed to preserve any objections at the time of Jack's deposition. However, the trial court's ruling fails to appreciate what objections may be made in a deposition, and what objections must be made to preserve the objection. The grounds for objecting are very limited at a deposition. Tim Gresback, *Deposition Bullies, Witness Coaching and Discovery Abuse*, 58 ADVOCATE 14, 15 (2015). This is because the purpose of depositions is to gather information; a deposition that is encumbered by numerous objections that are only applicable at trial defeats the overall purpose, not to mention the flow, of the deposition. *Id.* Examples of permissible objections to be made at a deposition include those based on privilege (I.R.C.P. 30(d)(1)) and to the form of the question. Gresback, *supra*. However, objections such as hearsay and relevance only go towards admissibility of the evidence, not discoverability. *Id.*; *see also* I.R.C.P. 26(b)(1)(A) ("Relevant information *need not be admissible* at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence") (italics added); *Quigley v. Kemp*, 162 Idaho 408, 411–12, 398 P.3d 141, 144–45 (2017) (explaining a substantive difference between admissibility and discoverability).

Here, there was no obligation by the District's counsel to object to any potential hearsay during the deposition. Accordingly, any objections that the District had about the *admissibility* of these hearsay statements would have been preserved for trial. The Delavans' argument that the District did not preserve an objection to hearsay evidence is unpersuasive.

the trial court in its written decision. Consequently, we reverse the trial court's ruling and hold that Jack's statement was inadmissible hearsay.

2. <u>The trial court abused its discretion in admitting Patrick Seale's testimony regarding Oliver's statement about the ownership of the boat ramp.</u>

The District challenged the trial court's admission of Patrick Seale's testimony on the basis that it was inadmissible hearsay. During trial, Seale testified as follows:

> Q.  [by Mr. Magnuson] . . . You had testified that you went over to the boat launch, saw Oliver Delavan on the boat launch and it's 1983?
> A. [by Seale] Yes.
> Q. And you saw him, as you described, clearing away debris and driftwood, etc.?
> A.  Yes.
> Q.  And so you asked him why he was doing that?
> A.  Yes.
> Q. And what did he tell you why he was doing what you have just described?
> A.  He said that that was his property and that he was responsible for it. And I was surprised, so I said, "I thought it was the County's." And  he said, "No, it was his but he lets the County use it."

The District objected to Seale's testimony as inadmissible hearsay prior to it being elicited. The trial court overruled the objection, finding that it was admissible under I.R.E. 803(1) as a present sense impression.

Here, the trial court appreciated the discretionary nature of the decision. However, the trial court misapplied I.R.E. 803(1). Rule 803(1) allows for hearsay statements that "describe[ ] or explain[ ] an event or condition, made while or immediately after the declarant perceived it." I.R.E. 803(1). The rationale justifying the exception is that the immediacy of the statement offers no opportunity for fabrication. *See* Fed. R. Evid. 803(1) advisory committee note. Oliver's statement, that it was his property and that he was only letting the county use it, is not the type of statement contemplated by I.R.E. 803(1). There was substantial opportunity to fabricate a response. Consequently, the trial court abused its discretion in overruling the District's objection.

Further, admission of this evidence affected the District's substantial rights. The evidence helped establish the Delavans owned the boat ramp. As a result, we reverse the trial court's admission of Seale's hearsay statement.

3. <u>The trial court did not abuse its discretion in admitting Gregory's testimony regarding the fence as a barrier.</u>

The District contends that Gregory testified about an issue that was outside his personal knowledge. The testimony was as follows: "Q. Do you have personal knowledge as to why the

12

[chain] link fence was installed? A. [by Gregory] I have personal knowledge of how we managed it since I was a child. And that was to be a barrier between the public and private area." The District's counsel objected that Gregory did not have personal knowledge as to why the fence was installed in 1949. The trial court overruled the objection.

The trial court did not abuse its discretion in allowing Gregory's answer. Under I.R.E. 602, a witness may only testify about a matter if there is evidence that the witness has personal knowledge of the matter. It is true that the question posed by the Delavans' counsel could have elicited a response to which Gregory would not have had personal knowledge because he was born after 1949.[7] However, Gregory's response only addressed the purpose of the fence *as it was managed* since he was a child. Gregory had personal knowledge of the way in which the property had been managed. While the management of the fence since Gregory's youth may not be highly probative as to the reason the fence was originally erected, it is nevertheless admissible testimony. Therefore, the trial court did not abuse its discretion in admitting it.

4. <u>The trial court did not abuse its discretion in admitting Gregory's testimony regarding the construction of the boat ramp.</u>

During trial, the Delavans' counsel questioned Gregory regarding whether the boat ramp was on the property at the time the property was conveyed to Gregory's grandparents, Oliver and Edna, in 1949. The District's counsel objected on the basis of lack of foundation because Gregory had not been born yet in 1949. Following the objection, but before the trial court could make a ruling, the Delavans' counsel switched his line of questioning, asking Gregory to review a news article describing the boat ramp's construction in 1955. Counsel then asked, "[D]o you have a belief as to whether or not the boat launch was in place when your grandfather acquired title from Mr. Boothe?" Gregory stated that based on the photograph and news article, he did not believe that a boat ramp existed when title was transferred to his grandfather. The trial court allowed the testimony over another objection from the District's counsel.

The trial court did not abuse its discretion when it admitted the statement. Again, I.R.E. 602 only allows a witness to testify to a matter on which the witness has personal knowledge. Here, the original question posed by counsel would have elicited a response to which Gregory did not have foundation to answer. However, counsel rephrased the question and asked Gregory to review the photo and state whether he *believed* a boat ramp existed based on the photo and

_____
[7] Gregory Delavan was born in 1953.

13

article. Based on the rephrasing of the question, Gregory had personal knowledge of his belief that the boat ramp did not exist in 1949 based on the photo.[8] Therefore, the trial court did not abuse its discretion in allowing Gregory's testimony.

**B.      Notwithstanding errors in admitting evidence by the trial court, there is substantial and competent evidence to support the trial court's decision regarding the lack of boundary by agreement.**

The first trial concerned the District's claim of ownership of the disputed property due to a boundary by agreement. Following post-trial briefing, the trial court concluded that the District had failed to prove either required element of a boundary by agreement. Further, the trial court found that the "[u]se of the boat launch by all parties other than [the Delavans] since its construction, has been permissive."

On appeal, the District argues that the trial court erred in a variety of ways when it decided that the District had failed to prove a boundary by agreement. The District argues that the trial court relied on evidence that should have been excluded as hearsay. The Delavans argue that there was sufficient evidence that the fence had been built as a barrier, not as a boundary.

This Court reviews a trial court's conclusions following a bench trial by determining whether the evidence supports the trial court's findings of fact, and whether those findings support the conclusions made by the trial court. *In re Estate of Smith*, 164 Idaho 457, 473, 432 P.3d 6, 22 (2018) (citation omitted). "This Court will not set aside a trial court's findings of fact unless the findings are clearly erroneous." *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009) (citing *Ransom v. Topaz Mktg., L.P.*, 143 Idaho 641, 643, 152 P.3d 2, 4 (2006); I.R.C.P. 52(a)). "[W]e will freely review conclusions of law and will draw our own conclusions based on the factual record." *In re Estate of Smith*, 164 Idaho at 474, 432 P.3d at 23 (citation omitted).

Under Idaho case law, boundary by agreement requires the party asserting the claim to prove two elements: "(1) an uncertain or disputed boundary involving adjacent properties, and (2) an agreement fixing the boundary." *Neider v. Shaw*, 138 Idaho 503, 506, 65 P.3d 525, 528

---

[8] Normally, the *belief* of a witness would not be relevant to the issues in a case. However, the proper objection to such a question would not be foundation, but rather relevance. The District did not object to the proffered evidence on the basis of relevance, so that objection was not preserved. I.R.E. 103(a); *Hecla Mining Co. v. Star-Morning Mining Co.*, 122 Idaho 778, 783, 839 P.2d 1192, 1197 (1992). In addition, the District's objection is to evidence that is undisputed. Oliver and Edna purchased the property in dispute in 1949. The boat ramp was not constructed until 1955. Therefore, the admission of Gregory's "belief" was harmless.

(2003) (citing *Cox v. Clanton*, 137 Idaho 492, 495, 50 P.3d 987, 990 (2002)). "The party seeking to establish boundary by agreement has the burden of proving these two elements by clear and convincing evidence." *Weitz v. Green*, 148 Idaho 851, 860, 230 P.3d 743, 752 (2010) (citation omitted). Further, "an agreed boundary binds successors in interest who purchase with notice, actual or constructive." *Neider*, 138 Idaho at 506, 65 P.3d at 528 (citing *Paurley v. Harris*, 75 Idaho 112, 117, 268 P.2d 351, 353 (1954)).

There is substantial and competent evidence that amply supports the trial court's finding that the District failed to prove that there was an agreement fixing the boundary by clear and convincing evidence. Given this ruling, there is no need to analyze the first element.

Under the second element of boundary by agreement, an agreement between the property owners may be inferred from the conduct of the parties or their predecessors. *Weitz*, 148 Idaho at 860, 230 P.3d at 752. For example, such conduct may include "acquiescence to the location and maintenance of a fence line for a long period of time; however, it is not conclusive evidence." *Id.* (citing *Brown v. Brown*, 18 Idaho 345, 357, 110 P. 269, 273 (1910)); *see also Johnson v. Newport*, 131 Idaho 521, 523, 960 P.2d 742, 744 (1998) (finding that a fence in existence for sixty years established boundary by agreement). In other words, Idaho law presumes an agreement fixing the boundary when a long-standing fence exists that has no other explanation other than as a boundary establishing the property line.

However, when a long-standing fence has an alternative explanation, it cannot be used to infer an agreement fixing the boundary. For example, in *Boyd-Davis v. Baker*, 157 Idaho 688, 693, 339 P.3d 749, 754 (2014), a party testified that the purpose for erecting a particular fence was to contain horses, and not to establish any boundary. This Court affirmed the trial court's finding that this original fence was never intended to serve as a boundary. *Id.* Accordingly, the effort to prove boundary by agreement failed.

Here, the trial court entered its Findings of Fact, Conclusions of Law, and Verdict following a bench trial. Thus, this Court reviews the decision to determine whether there is substantial and competent evidence to support the trial court's findings. *In re Estate of Smith*, 164 Idaho at 473, 432 P.3d at 22.

The trial court made the following factual findings in order to determine that there was no boundary by agreement:

- Oliver and Edna Delavan purchased the subject property in 1949.

15

- The boat ramp was constructed in 1955.
- A fence was later constructed between the southern edge of the boat ramp and the remainder of the Delavan property.
- The Delavans owned the land on which the boat ramp was built.
- The public's use of the boat ramp was permissive.
- The fence was intended as a barrier and not a boundary.

Given our decision that certain statements made by Jack and Seale should have been excluded by the trial court, we must look to the record to determine whether the decision that the fence was a barrier and the boat ramp was on the Delavan property is supported by other independent evidence.

For a boundary by agreement claim to be successful, there must be some acquiescence that the parties treat the fence as a boundary. *See Weitz*, 148 Idaho at 860, 230 P.3d at 752. Here, even excluding the hearsay evidence, the trial court's factual findings are supported by substantial and competent evidence. The District failed to prove by clear and convincing evidence that there was an agreement to fix the boundary because the record showed that Oliver Delavan and his successors never treated the fence as a boundary.

First, there is substantial and competent evidence to support the trial court's finding that the Delavans owned the property on which the boat ramp was built. Even absent Seale's hearsay testimony, Seale witnessed Oliver cleaning the boat ramp. It is reasonable to infer from this evidence that the owner of the boat ramp would be the person cleaning it. It begs the question: if Oliver transferred the boat ramp property to the District, why would he be maintaining it? The simple answer is: he wouldn't. Next, Kootenai County applied to extend portions of the boat ramp in 1977. The county's application included in its documentation a diagram that placed the boat ramp on the Delavans' property. Additionally, in 1992, when Jack appealed his assessment valuation for Lots 19 through 21, the county assessor recommended that the portion of the Delavan property be considered a "right-of-way" given the location of the boat ramp *on* the Delavan property. Specifically, the assessor stated, "[t]he survey information, as substantiated by the appraisal photo, depicts the area occupied by the Boothe Park access road and boat ramp encroaching within Lot 19 *as owned by the Delavans*."

Second, there is substantial and competent evidence that the fence line was not intended as a boundary. According to Jack, Oliver reconstructed all fences that had previously been in place on Oliver's property. The District contends that the location of the previous fence markers

16

indicates that it was the boundary line. Tellingly, the old remnants of the fence only went to the driveway of the Delavans' property, not all the way to the lake. Given that the property in dispute is located west of the Delavans' driveway, the location of the previous fence line is not indicative of the boundary line. Further, Gregory Delavan testified that he helped manage the fence as a barrier from the time he was a child going forward.

Finally, the District's evidence that the fence was intended as a boundary is unpersuasive. For example, the 1956 Kindler survey indicated the location of Oliver's chain link fence as the boundary line. However, there is no indication that Oliver was ever aware of the Kindler survey, or that Kindler had contacted Oliver while surveying the land. Further, the 1956 Kindler survey was never recorded so Oliver could not have been on constructive notice of the survey. Kindler conducted his survey to try to resolve the *uncertainty* involving the property. Unfortunately, the Kindler survey never proceeded to a resolution. There was uncertainty but that uncertainty effectively supports the Delavans' claim, not the District's.

Accordingly, there is substantial and competent evidence that the Delavans owned the property on which the boat ramp was built. Further, there is substantial and competent evidence that the fence served a different purpose from acting as a boundary. Accordingly, the trial court's conclusion that the District failed to prove a boundary by agreement by clear and convincing evidence is affirmed.

## C. The trial court erred by reading a hostility requirement in Idaho Code section 40-202(3).

Following the trial court's finding in the first trial, that the use of the boat ramp had been permissive, the Delavans filed a motion for partial summary judgment on the District's claim based on Idaho Code section 40-202(3). The trial court granted the Delavans' motion for partial summary judgment finding that because the use of the boat ramp had been permissive, the District could not gain a prescriptive right pursuant to Idaho Code section 40-202(3).

This Court employs the same standard as the trial court when reviewing rulings on summary judgment motions. *La Bella Vita, LLC v. Shuler*, 158 Idaho 799, 804–05, 353 P.3d 420, 425–26 (2015) (citing *Wesco Autobody Supply, Inc. v. Ernest*, 149 Idaho 881, 890, 243 P.3d 1069, 1078 (2010)). "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a).

17

"Statutory interpretation is a question of law over which this Court exercises free review." *Carrillo v. Boise Tire Co.*, 152 Idaho 741, 748, 274 P.3d 1256, 1263 (2012) (citation omitted). When this Court engages in statutory interpretation, it applies the following principles:

> The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*State v. Schulz*, 151 Idaho 863, 866–67, 264 P.3d 970, 973–74 (2011) (quoting *Farber v. Idaho State Ins. Fund*, 147 Idaho 307, 310, 208 P.3d 289, 292 (2009)).

Idaho Code section 40-202(3) states, "all highways used for a period of five (5) years, provided they shall have been worked and kept up at the expense of the public . . . are highways." The term "highways" is defined so broadly that it would include the boat ramp at issue here. I.C. § 40-109(5) (defining highways to include such things as "culverts, sluices, drains, ditches, waterways, embankments, retaining walls, bridges, [and] tunnels").

Under Idaho case law, the District may establish that a road has become a highway by proving: "(1) if the public uses the road for a period of five years, and (2) the road is worked and kept up at the expense of the public." *Ada Cty. Highway Dist. v. Total Success Inv., L.L.C.*, 145 Idaho 360, 365, 179 P.3d 323, 328 (2008) (citations omitted). The elements must be proven by a preponderance of the evidence. *Id.* (citing *Floyd v. Bd. of Comm'rs*, 137 Idaho 718, 724, 52 P.3d 863, 869 (2002)). The establishment of a highway "vests in the public . . . [the] right to use[ ] the land over which the road runs for highway purposes, and the public cannot be divested of this right save by vacation or abandonment of the highway in the manner prescribed by law." *State v. Nesbitt*, 79 Idaho 1, 6, 310 P.2d 787, 791 (1957) (quoting 39A C.J.S. Highways § 19), *superseded by statute on different grounds by John W. Brown Props. v. Blaine Cty.*, 138 Idaho 171, 176, 59 P.3d 976, 981 (2002). This also means that the District does not own the underlying land upon which the highway is located; rather, the District merely has an easement over the road for the benefit of the public. *See id.*

As mentioned, the District argues that the trial court erred in two ways. First, it argues that the trial court's finding that the use of the boat ramp was permissive is not supported by

18

substantial and competent evidence. Second, the District contends that the trial court created a new element of hostility that is not part of the statutory language under Idaho Code section 40-202(3). As the issue regarding hostility is dispositive, we will address that first.

To support its view that hostility is a required element for establishing a statutory right of public use, the trial court relied on *Lattin v. Adams County*, 149 Idaho 497, 503, 236 P.3d 1257, 1263 (2010). In *Lattin*, this Court stated,

> the record does not suggest that any public access was hostile to Respondents' ownership. "[W]here the owner of real property constructs a way over it for his use and convenience, the mere use thereof by others which in no way interferes with his use will be presumed to be by way of license or permission." . . . . Respondents very well could have permitted such access to the forest.

*Id.* (internal citations omitted). The District contends that this holding is merely *dicta* and conflates the requirements for a private prescriptive easement and a public highway created under Idaho Code section 40-202(3). We agree.

There is no explicit hostility requirement set out in the statute for establishing a public highway. Notably, this Court has recently articulated the importance of the strict application of unambiguous statutes. This Court has reiterated that "it is the province of the Legislature to make and amend laws[,]" and that "this Court is without authority to amend laws enacted by the Legislature because we think them unwise." *Hoffer v. Shappard*, 160 Idaho 868, 883, 380 P.3d 681, 696 (2016) (citation omitted). Here, the plain language of Idaho Code section 40-202(3) contains only two elements. First, the highway must be used for a period of five years. I.C. § 40-202(3). Second, the highway must be maintained at the public expense. *Id.* The statute does not contain a requirement for hostile or adverse use by the public.[9] *See id.*

---

[9] We are not alone in determining that a statutory method of creating a public easement over a public road does not require hostile use. A Missouri appellate court held that the statutory method of establishing a public road was distinct and separate from establishment of one by prescription. *Wilson v. Sherman*, 573 S.W.2d 456, 459 (Mo. Ct. App. 1978); *Claybrook v. Murphy*, 746 S.W.2d 140, 143 (Mo. Ct. App. 1988). The Missouri appellate court held that if there is sufficient evidence to satisfy the elements in the statute there is no need to prove any additional elements, including hostile use. *Wilson*, 573 S.W.2d at 459. The Missouri statute is materially similar to Idaho Code section 40-202(3). Missouri's statute states, "all roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads[.]" Mo. Ann. Stat. § 228.190.

In contrast, a New York appellate court, in interpreting a similar statute to Idaho's, implied that there is a hostility requirement for the creation of public roads. *Gardner v. Suddaby*, 417 N.Y.S.2d 803, 805 (N.Y. App. Div. 1979); *see also* 39A C.J.S. Highways § 20. However, it is not within this Court's powers to read something into a statute that is not there. *See Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 896, 265 P.3d 502, 509 (2011) (explaining that the Court does not have the authority to revise or void an unambiguous statute on the ground

19

In addition, the trial court's reliance on *Lattin* was misplaced. The facts in *Lattin* are easily distinguishable. In *Lattin*, Adams County sought a declaratory judgment to a roadway (Burch Lane) by prescription. *Lattin*, 149 Idaho at 500, 236 P.3d at 1260. However, Adams County never maintained the roadway in question: "There is absolutely no evidence anywhere that the County has ever performed any maintenance on or improved Burch Lane before Respondents filed this lawsuit." *Id.* at 503, 236 P.3d at 1263. Consequently, any language in *Lattin* about a "hostility" requirement was unnecessary to the holding.[10] To the extent *Lattin* can be read to identify a "hostility" requirement in Idaho Code section 40-202(3) it was unnecessary to the decision in *Lattin* and we disavow that portion of the decision.

Given that the statute does not require that the public's use be hostile to the landowner's, the trial court erred as a matter of law when it imposed a hostility requirement not found in Idaho Code section 40-202. Accordingly, whether the use of the boat ramp was permissive is irrelevant to the applicability of the statute. Therefore, the trial court's order granting partial summary judgment is vacated, and the case will be remanded to the trial court for a redetermination of the District's claim under Idaho Code section 40-202(3).

**D.      The trial court did not err in its interpretation of the 1949 deed.**

Whether or not the trial court finds that Boothe Park Road is a public highway, the ownership of the underlying land must still be determined. Accordingly, we must analyze the trial court's interpretation of the 1949 deed conveying property from the Boothes to Oliver and Edna Delavan. We hold that the trial court's interpretation of this deed is supported by substantial and competent evidence.

On June 20, 2017, the trial court entered its Findings of Fact, Conclusions of Law, and Verdict regarding the quiet title actions. The trial court found in favor of the Delavans because the 1949 deed was latently ambiguous, and the intent of the parties was to correct the lack of lake frontage feet Oliver and Edna had received.

The 1949 deed from the Boothes to Oliver and Edna conveyed the following property:

---

that the statute would produce an absurd result); *see also Herndon v. West*, 87 Idaho 335, 339, 393 P.2d 35, 37 (1964) (citation omitted) ("If it is socially or economically unsound, the power to correct it is legislative, not judicial."). Accordingly, unlike New York, we will not read a hostility requirement into Idaho Code section 40-202(3). If we are incorrect and the legislature intended to include the requirement that the public's actions be hostile to the landowner, the legislature has it within its power to remedy this oversight.

[10] It was reasonable for the trial court to rely on the language in *Lattin* that identified a "hostility" requirement in the statute. However, that language was *dicta* and unnecessary to our analysis in *Lattin*.

> Commencing at the Northwest corner of Lot 19, as originally platted, Lakeshore addition to Sunnyside, section, 33, Twp 50 North, Range 3 W B M thence North 79° 58' East to the West boundary of *the existing county road*; thence along the existing right of way line of said county road to its intersection with the meander line of Lake Coeur d'Alene; thence Southerly along the meander line of said Lake Coeur d'Alene, to the point of beginning, said land being in the county of Kootenai, State of Idaho.

Accordingly, the location of the boundary line is dependent upon the location of the "existing county road" on August 17, 1949, the date of the conveyance.

The standard of review used by this Court when reviewing a trial court's interpretation of a deed "depends on whether the instrument is ambiguous." *Baker v. KAL, LLC*, 163 Idaho 530, 533, 415 P.3d 939, 942 (2018) (quoting *C & G, Inc. v. Rule*, 135 Idaho 763, 765, 25 P.3d 76, 78 (2001)). "Whether a deed is ambiguous is a question of law, over which we exercise free review." *Id.* If the deed is unambiguous, the interpretation is a matter of law, which we review *de novo*. *Id.* If the deed is ambiguous, the interpretation is a question of fact, "we will defer to the findings of the trial court so long as those findings are supported by substantial and competent evidence." *Id.*

"There are two types of ambiguity, patent and latent." *Knipe Land Co. v. Robertson*, 151 Idaho 449, 455, 259 P.3d 595, 601 (2011). A patent ambiguity exists when the document is ambiguous on its face. *Id.* (citation omitted). "A latent ambiguity exists where an instrument is clear on its face, but loses that clarity when applied to the facts as they exist." *Id.* (citing *Cool v. Mountainview Landowners Co-op. Ass'n, Inc.*, 139 Idaho 770, 773, 86 P.3d 484, 487 (2004)). "Where the facts in existence reveal a latent ambiguity in a contract, the court seeks to determine what the intent of the parties was at the time they entered into the contract." *Id.* (citing *Snoderly v. Bower*, 30 Idaho 484, 488, 166 P. 265, 266 (1917)).

Here, the trial court did not err in determining that the 1949 deed contained a latent ambiguity. The precise location of the "existing county road" in 1949 was not determinable. There was little evidence offered by the District as to the actual location of the county road (Boothe Park Road) as it existed in August of 1949. The District elicited testimony from Marilyn Moore, Boothe's granddaughter. Moore visited Boothe Park Road in 2015, and testified at trial that Boothe Park Road extended to the boat ramp just as it did in 1949.

However, Jack Delavan testified that there was no boat ramp in 1949, as it was not constructed until 1955. Further, Jack testified that the existing county road stopped at the corner

21

of the Boothe Park property and that "Boothe Park [Road] never . . . went past the corner of [the Delavans'] property[.]" Further, the Plat noted that the county road stopped before it met the meander lines of Lake Coeur d'Alene.

The District also presented an aerial photo of the property in dispute taken in 1951. The District contends that the photo demonstrates that the road existed and that it terminates where the boat ramp is now. However, the photo is grainy and difficult to discern. Nothing in the photo depicts the county road going near the boat ramp. Finally, the District introduced Ray Kindler's 1956 unrecorded survey, which showed the roadway as terminating at "Boothe Park," at a concrete monument that is positioned near the location of the Delavans' driveway. According to both Jack and Kindler, the road did not extend beyond the Delavans' driveway.

Additionally, neither of the parties' expert witnesses could identify the location of the existing county road in 1949. The District's expert, Russell, testified he did not know where the county road existed in 1949, but believed that the Plat was the best indicator.[11] The Delavans' expert, Ernest Warner, testified he did not know where the county road was located in 1949. He too thought the Plat was the best indicator.

Therefore, we agree with the trial court's ruling that the deed is latently ambiguous because it is unclear where the county road referenced in the deed was located at the time of the conveyance. The trial court properly found, due to an absence of evidence as to the location of the then-existing county road, that the deed from the Boothes to Oliver and Edna was ambiguous. Given this finding, the trial court was charged with determining, as a question of fact, the location of the boundary line.

Next, this Court must determine whether the trial court's finding regarding the intention of the parties (the Boothes and Oliver and Edna Delavan) is supported by substantial and competent evidence. The trial court inferred that the deed from the Boothes to Oliver and Edna was intended to compensate Oliver and Edna for the lot numbering problem and to grant Oliver and Edna the amount of lake front property necessary to ensure that they received 100 feet of lake front property for each of the lots they purchased.

This finding is supported by substantial and competent evidence. Russell, the District's expert witness, testified that the deed was intended as a corrective action. Further, Scott Rasor's

---

[11] As noted above, the Plat indicated that the county road stopped before it met the meander lines of Lake Coeur d'Alene.

22

2001 survey noted, "[t]he lots for Lakeshore Addition to Sunnyside were laid out from prior surveys and the original Plat at 100 feet wide and with parallel lines." With the inclusion of the disputed property, the Delavan frontage is exactly 300 feet (three lots at one hundred feet each). Accordingly, the trial court's finding is supported by substantial and competent evidence. Therefore, we affirm the trial court's findings of fact and conclusions of law establishing that the Delavans are owners of the disputed property.

However, this holding is separate and distinct from the determination of whether Boothe Park Road is a public highway to the water's edge. Accordingly, the trial court's determination on remand will not change the fact that the Delavans are owners of the property underlying the purported easement.

**E.      The trial court erred in its Second Amended Judgment.**

In its Second Amended Judgment, the trial court decreed to the Delavans the right in the disputed property alongside the existing asphalt road. The District contends that the trial court's Second Amended Judgment failed to take into account the shoulder area that exists outside of the asphalt road. The District argues that the shoulder area was part of the road and therefore should not have been granted to the Delavans. The area in question is indicated in dark gray on Exhibit 1 to this Court's opinion.

There is little, if any, evidence to support the trial court's decision to include the shoulder portion of the road in its Second Amended Judgment. Mainly, the only evidence noted by the Delavans is Russell's acknowledgement that the road depicted in Warner's survey was harmonious with the curvature of the road depicted on the 1910 plat. However, Russell did not testify that the asphalt surface of the road was the extent of the right-of-way as maintained by the District.

In contrast, there is evidence that the portion of the property was a shoulder used for road drainage, posting road signs, and snow storage. The evidence presented by the District at trial shows traffic signs and a visible shoulder next to the asphalt road. The trial court should have explained why it resolved the issue surrounding the shoulder in favor of the Delavans prior to entering the Second Amended Judgment. Because it is unclear why the trial court reached the conclusions it did in quieting title to the shoulder in favor of the Delavans, this portion of the decision is unsupported by substantial and competent evidence. Accordingly, we vacate the trial

23

court's Second Amended Judgment and remand for a further determination as to the issue regarding the shoulder area.

**F.      The Delavans are not entitled to attorney fees.**

The Delavans request attorney fees pursuant to Idaho Code section 12-121. Section 12-121 provides, "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." The Delavans contend that the District is merely requesting this Court to reweigh the evidence and therefore the appeal was pursued frivolously, unreasonably, or without foundation. However, the District raised valid evidentiary issues. Further, we held that the District prevailed on appeal regarding whether Idaho Code section 40-202(3) contains a hostility requirement. Accordingly, the District's appeal was not pursued frivolously, unreasonably, or without foundation. Therefore, the Delavans are not entitled to an award of attorney fees.

## IV.   CONCLUSION

For the foregoing reasons, we affirm the trial court's decision that there was no boundary by agreement. Although we have reversed two of the trial court's evidentiary rulings, we nevertheless affirm the trial court's interpretation of the 1949 deed. However, we vacate the trial court's order granting the Delavans partial summary judgment on the District's claim to a public highway because hostility is not a requirement under the plain language of Idaho Code section 40-202(3). We remand for a determination as to whether the District has established a statutory public highway.

Further, we vacate the trial court's Second Amended Judgment that awarded the Delavans the shoulder area of Boothe Park Road. We also remand that issue for further determination as to whether the District has an easement on the shoulder area pursuant to Idaho Code section 40-202(3).

We decline to award the Delavans attorney fees. Additionally, we decline to award either party costs.

Chief Justice BURDICK, Justices BRODY, BEVAN and MOELLER CONCUR.

24

Exhibit 1:

*Map of Disputed Property*



N14°28'28"W
33.00'

N33°34'32"W
28.14'

N55°28'50"W
25.28'

N77°00'03"W
20.82'

N56°02'02"W
67.58'

N51°37'04"W
60.72'

CALCULATED POINT,
NOTHING FOUND OR
SET (TYP)

N87°55'17"W
37.38'

FND
1/2" IP

LINES DERIVED FROM
FOUND MONUMENTS
AND PREVIOUS RECORD
OF SURVEY (TYP)

N24°11'13"W
69.04'

FND 1/2" IR

N82°01'13"W
52.99'

FND 1/2" IR
IN CONC

N77°28'04"E
75.29'

EXISTING ASPHALT

FND
1/2" IR

N80°49'34"E
3.48'

N8°07'08"W
200.08'

RPDR - SE CORNER OF PARCEL 1
(INST. NO. 1392298) AND OF TAX
NO. 17015 (ROS BOOK 21, PG 80)

N31°58'83"W
21.12'

N50°36'13"W
82.80'

PARCEL BOUNDARY
(TYPICAL)

FND
5/8" IR

N87°17'23"W
80.92'

S88°19'59"W
21.87'

S83°24'15"W
24.40'

S77°10'48"W
64.23'

S76°21'20"W
32.48'

S70°08'19"W
8.18'

FND
1/2" IR

DELAVAN PARCEL
32,221 FT²±

S78°23'05"W
157.93'

FND 5/8" IR
PLS 8374
PER ROS
BK 21, PG 80

THIS LINE ESTABLISHED FROM
DEED (INST. NO. 1392298) AND
RECORD OF SURVEY (BOOK 21,
PAGE 80)

N80°50'16"E 307.31'

RECORD OF
SURVEY
BK 25
PG 475

200.78'

N14°15'35"W

FND 5/8" IR
PLS 8374
PER ROS
BK 21, PG 80

100.00'

65.80'

S20°50'06"E

88.19'

FND
1/2" IR

N30°50'06"E

DIRECTION OF THIS LINE CALCULATED
FROM DEED (INST. NO. 1392298) AND
RECORDS OF SURVEY (BOOK 21, PAGE
80 AND BOOK 25, PAGE 475) -
DISTANCE TAKEN FROM PLAT OF
LAKESHORE ADDITION TO SUNNYSIDE
(BOOK C, PAGE 84)

REGISTERED PROFESSIONAL LAND SURVEYOR
4585
7/27/17
ERNEST H. WARNER
STATE OF IDAHO

DELAVAN
EXHIBIT CASE NO. CV-2017-3131

| PROJECT NO.: 18.021 | DRAWN BY: FHW | SCALE: 1"=15' |
| CHECKED BY: FHW | DATE: 7/27/17 |
| SHEET NO.: 1 OF 1 | DRAWING: FINAL EXHIBIT REV_7/27/17 |

Tate Engineering, Inc.
1625 North 4th Street, Ste. 204
Coeur d'Alene, Idaho, 83814
(208) 676-8708 e-mail: info@tate-eng.com